## *The* STATE *vs.* SMITH.

A husband and wife having separated, pursuant to articles previously entered into, in which he had stipulated that in the event of such separation the children should remain with her; the court, on *habeas corpus* sued out at his request, ordered the children into the custody of the mother, pursuant to the articles of separation; she living with her father, and they being of an age to require her care.

But independent of such articles, the court, in such cases, in the exercise of its sound discretion, and for the good of the children, will only free them from undue and improper restraint; the father having no vested right, in any case, to the exclusive custody of his children.

THIS case is stated in the opinion of the Court, delivered by

PARRIS J. Previous to the last term a writ of *habeas corpus* was granted, by one of the justices of this court, directed to the defendant, requiring him to bring up the bodies of *Emeline Maria Hall, Solomon Smith Hall,* and *Aaron Oliver Hall,* minors under the age of fourteen years, and children of *Jonathan Hall,* the petitioner, alledged to be wrongfully restrained of their liberty by the defendant,

and by him held in duress, against their will and the will of their father. The writ was returned at the last term holden in this county, and the children were produced in court to await its decision. From the return it appears, that the petitioner married the defendant's daughter, and that the children, described in the writ, are the issue of that marriage ; that the eldest is between ten and eleven, and the youngest between four and five years of age ;—that sometime in the preceding *February*, the petitioner brought the eldest child to the defendant's dwelling house and left her there, and that in the afternoon of the same day the petitioner's wife came, bringing with her the two other children named in the writ, and that she, with her three children, have continued to live and dwell in the defendant's family ever since, without any force or restraint on his part against them, the children being under the management and direction of their mother. It further appears that by certain articles of agreement, under seal, entered into by the said petitioner and defendant, the former, some years since, conveyed a moiety of his farm in trust for the use and benefit of his wife ; that the defendant was one of the trustees, and that the petitioner, by said articles of agreement, stipulated that " if, in consequence of any ill treatment by him, his wife should be rendered unhappy and unwilling to cohabit with him, and should make affidavit that she is so treated by him as that she cannot live happily with him, then she may live separately from him at her own pleasure, and shall be at liberty to take the children under her own control and custody, and keep them so long as they, the said petitioner and his wife, should live apart ;" that the said petitioner's wife did on the seventeenth of *March* last make affidavit that the " ill treatment she had continually received from him, the said petitioner, is such that she cannot live with him in peace and quietness, and much less in happiness," and that they have ever since continued to live separate and apart from each other. It further appeared in evidence, that, immediately previous to this separation, the petitioner had been charged as the father of an illegitimate child, and had settled for the same, by note with sureties ;—that the other moiety of his real estate and all his personal property had been conveyed by

deed. of mortgage and bill of sale, to indemnify his sureties, and for the payment of l is other debts.

The children being now in the custody of the mother, and in court by her permission and consent, the petitioner seeks to reclaim them through the interposition of the law, alleging his paramount right to their custody, and that the court is not at liberty, in the exercise of any discretionary power, to deny his petition.

That the father is generally entitled to the custody of his infant children, is a principle resulting from his obligation to maintain, protect and educate them. These are duties thrown upon him by the law of nature, as well as of society, which he is not permitted to disregard, and which he could not conveniently discharge, if the object of those duties were withdrawn from his control.

This right is, however, neither unlimited nor unalienable. It continues no longer than it is properly exercised ; and whenever abused, or whenever the parent has become unfit, by immoral or profligate habits, to have the management and instruction of children, courts of appropriate jurisdiction have not hesitated to interfere to restrain the abuse, or remove the subject of such abuse from the custody of the offending parent. 4 *Bro. Parl. Cas.* 302; *Amb.* 301; 2 *Bro. Ch. Rep.* 500 ; 10 *Ves.* 52 ; 12 *Ves.* 492 ; *Jacob's Rep.* 267. The existence and origin of this power was elaborately considered in the late case of *Wellesley v. The Duke of Beaufort,* 2 *Russ.* 1, wherein Lord *Eldon* is reported to have said, that " what he was called upon to do (to deprive the father of the custody of his children) was a strong measure ; that the interposition of the court stood upon principles which it ought not to put into operation without keeping in view all the feelings of a parent's heart, and all the principles of the common law with respect to parents' rights." In that case the mother was dead, and there existed no parental feelings adverse to those of the father. He was not seeking to withdraw his children from the society of their mother, but from the custody of relatives more remote, and yet his application was denied by the Chancellor, and the decision was confirmed, on appeal, by the House of Lords.

These authorities are not cited as precedents for a common law court, but they do establish the fact, that the right to control paren-

tal authority has been claimed and exercised by the appropriate court in England for more than a century.

The principle of depriving the father or the mother of the guardianship of their children, on the ground of notorious misconduct, is also distinctly recognized in the civil code of France, *art.* 444, 389 ; and, in cases of separation between husband and wife, the father's right to the children is altogether rejected, and the courts entrust the children to him, or to the mother, or to a third person, as the interests of the child render expedient. *Pail.* 134, *note e.*

So the father, under our statute, may waive his parental rights, and transfer his power over, and assign the services of his minor children to another, without their consent, until they arrive at the age of fourteen ; and it has been holden by the Supreme Court of Massachusetts, in an opinion delivered by the late learned Chief Justice, that, at common law, he may even transfer this power for a longer period, limited only by the child's minority and the father's life ; and that, notwithstanding the statute, all contracts of service, legal at the common law, still remain so. *Day v. Everett, 7 Mass.* 145, cited by defendant's counsel. The soundness of this doctrine, to the extent in which it is laid down in the case just cited, has been questioned by Mr. Justice *Story* in *United States v. Bainbridge, 1 Mason,* 78, 85 ; and in another court of high authority it has been decided that the statute must be considered as controlling the common law. 8 *Johns.* 328, *Ex parte McDowle.* Be that as it may, there can be no doubt but, under our statute, a father may transfer his right to the custody of his children until they arrive at the age of fourteen, without their consent. The subjects of this process are all under that age. From the articles of agreement recited in the return, and which are not controverted, it appears that the petitioner did consent that, upon a certain contingency, his wife should be at liberty to take the children under her own control and custody, and keep them so long as the parents continued to live apart from each other ; and that this contingency has happened, manifestly through the misconduct and fault of the petitioner. For it could not be expected that his wife would " live happily with him," or that his conduct would fail " to render her situation unhappy," whenever it should

come to her knowledge. She therefore, separated from him as she was justified in doing, as well by law as his own agreement, and taking the children with her, returned to her father's; to whom the petitioner had conveyed property in trust for her use and support.

Upon this evidence, the decision of the cause might, perhaps, be placed on the voluntary transfer by the father of all his authority over these children to the wife, and that having so transferred his power and waived his parental rights, he ought not to be permitted now to reclaim them against her.

But there is another view of this case which seems to be supported by high and unquestionable authority. The object of the writ of *habeas corpus* is to remove illegal or improper restraint, and when that is done, the power of the court in the premises is completely exhausted. From the preamble to the act directing this process, as well as the act itself, it is manifest that its object was merely to afford relief from every wrongful imprisonment or unlawful restraint of personal liberty. The fifth section provides that if it shall appear that the imprisonment or restraint is without due order of law or sufficient cause, the person imprisoned or restrained " shall be discharged from such commitment or restraint." Now the restraint in this case is nothing more than of the parental character, exercised by the mother for the benefit of her children, and such as the law permits or even enjoins to be exercised by all who are clothed with parental authority. It does not appear that the children are dissatisfied with remaining with the mother, or that they have expressed any wish to be returned to the care of their father.

Two of them are not of such age as to render it expedient to consult their wishes. Neither does it appear that the mother is less capable or disposed than the father, properly to govern and instruct them; or that they would be better supported under his control than in their present situation. He, however, claims to have the custody and care of them as of right, and calls upon the court to enforce this right.

In *Rex v. Delaval,* 3 *Burr.* 1434, Lord *Mansfield* said " in writs of *habeas corpus* directed to private persons to bring up infants, the court is bound, *ex debito justitiæ,* to set the infant free from an im-

proper restraint, but they are not bound to deliver them over to any body. This must be left to their discretion according to the circumstances that shall appear before them." In *Rex v. Smith,* 2 *Strange,* 982, a boy under fourteen was brought up on *habeas corpus,* sued out by his father to obtain possession of him from his aunt; but the court merely left the boy at liberty to go where he pleased, and he chose to stay with his aunt. In *Commonwealth v. Addicks, & ux.* 5 *Binney,* 520, the father claimed the custody of his two children, one ten, the other seven years of age. They were brought up on *habeas corpus* by the mother, where it appeared that she had been guilty of adultery, that the father had been divorced from her *a vinculo* for that cause, that she had married the adulterer, in violation of law, and was then living with him. Chief Justice *Tilghman,* in delivering the opinion of the court, observed " we have considered the law, and are of opinion that although we are bound to free the person from all illegal restraints, we are not bound to decide who is entitled to the guardianship, or to deliver infants to the custody of any particular person, but we may in our discretion do so, if we think that, under the circumstances of the case, it ought to be done." The court, however, refused the application, and permitted the children to remain with the mother. In the case of *M. E. Waldron,* 13 *Johns.* 418, the minor was residing in the family of her maternal grandfather, her mother being dead. The case came before the court on *habeas corpus* to the grandfather, sued out upon the application of the father, who claimed the custody of his daughter.— Chief Justice *Thompson,* in delivering the opinion of the court, referred with approbation to the principles laid down in *Rex v. Delaval* and added, " in the present case the child cannot be considered under any improper restraint. The case of *Commonwealth v. Addicks* is very much in point, and a strong corroboration of the principle that it is a matter resting in the sound discretion of the court, and not matter of right, which the father can claim at the hands of the court." The application of the father was denied, and the minor permitted to remain in the family of the grandfather. The last authority to which I shall refer is *United States v. Green,* 3 *Mason,* 482. In that case a writ of *habeas corpus* had been issued upon

the petition of *Putnam*, a citizen of New-York, against *Green*, a citizen of Rhode Island, to bring up the body of *Eliza A. Putnam*, an infant daughter of the petitioner, about ten years old, alleged to be wrongfully detained in the custody of the defendant, who was her grandfather. In pronouncing the opinion of the court, *Story J.* said, " as to the question of the right of the father to have the custody of his infant child, in a general sense it is true. But this is not on account of any absolute right of the father, but for the benefit of the infant, the law presuming it to be for its interest to be under the nurture and care of its natural protector both for maintenance and education. When, therefore, the court is asked to lend its aid to put the infant into the custody of the father, and to withdraw him from other persons, it will look into all the circumstances, and ascertain whether it will be for the real, permanent interest of the infant ; and if the infant be of sufficient discretion, it will also consult its personal wishes. It will free it from all undue restraint, and endeavor, as far as possible, to administer a conscientious, parental duty with reference to its welfare. It is an entire mistake to suppose that the court is at all events bound to deliver over the infant to his father, or that the latter has an absolute vested right in the custody."

From an examination of these authorities, I consider the law well settled, that it is in the sound discretion of the court to alter the custody of these minor children or not, and that the father cannot claim them as matter of right. In the exercise of that discretion under which I am presumed to act in this case, I cannot forget that the eldest of these children is a daughter, requiring peculiarly the superintendance of a mother ;—that the others, although males, being of tender ages, may probably be as well governed and instructed by her as by the father, especially as it is in evidence, from the petitioner's witnesses, that she is a " smart, industrious woman, and a kind, good mother";—that the parental feelings of the mother toward her children are naturally as strong, and generally stronger than those of the father ;—that the separation of the heads of this family has been caused by the imprudent conduct of the petitioner, and that by his voluntary act he consented, in case of such separa-

The State *v.* Smith.

tion, to relinquish to the mother the right of custody and control of her children, and conveyed a moiety of his real estate in trust for her support, and that the residue of his property is mortgaged and conveyed to indemnify his sureties and for the payment of his debts. All these considerations seem to require that this application should not be granted ; and in this opinion my brethren unanimously concur.

*Fessenden,* for the petitioner.

*N. Emery,* for the respondent.

# CASES

### IN THE

# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF LINCOLN, MAY TERM, 1830.