[No. 19327. In Bank.—March 21, 1895.]

# E. W. SARGENT, Respondent, *v.* GRACE ELLA SARGENT, Appellant.

Husband and Wife—Desertion—Contract of Separation—Construc-
tion of Code—Revocation.—Section 101 of the Civil Code, which pro-
vides that "consent to a separation is a revocable act, and, if one of
the parties afterward in good faith, seeks a reconciliation and restora-
tion, but the other refuses, such refusal is desertion," was intended
simply to declare the effect of such revocation upon the legal status of
the parties as affecting desertion as a ground of divorce, and does not
provide for a revocation of the contract of separation provided for in
section 159 of the same code, which provides that husband and wife
"can agree in writing to an immediate separation, and may make pro-
vision for the support of either of them and of their children during such
separation"; and, until avoided by the mutual resumption of marital
duties, or the divorce of the parties, such contract remains binding and
obligatory upon the parties thereto as effectually as any other contract,
subject only to the limitation imposed by section 101.

Id.—Contract for Custody of Children.—Parents have a right to con-
tract with each other as to the custody and control of their offspring,
and to stipulate away their parental rights; and such contracts are bind-
ing upon them until other disposition of the children is made in an action
for divorce or other proceedings in which the court may dispose of the
custody of the children.

Appeal from a judgment of the Superior Court of
Los Angeles County.

The facts are stated in the opinion of the court.

*Wells, Monroe & Lee,* for Appellant.

*John D. Pope,* and *Wilson & Lamme,* for Respondent.

Van Fleet, J.—Appellant and respondent are hus-
band and wife. This action was brought by the hus-
band to have awarded to him the exclusive custody
and control of Lillie W. Sargent, the minor daughter
of the parties, aged thirteen years—the sole issue of the
marriage—then living with the mother.

The court found that the parties, in April, 1890, en-
tered into a contract of separation, wherein it was agreed
that by reason of unhappy differences the parties should
live separate and apart during the continuance of their

matrimonial obligations, unless they should mutually agree to resume them; that the wife should have the sole and exclusive custody and control of said minor child, and of her education and bringing up, until the child should attain the age of eighteen years, without any interference whatsoever on the part of the husband; that the wife should be at liberty to live in such place or with such relatives or friends as she should see fit; and that the husband should pay to the wife, so long as the marriage relation should exist, and she should continue to live apart from him, the sum of sixty dollars per month, for the support and maintenance of the wife and daughter, except that after the daughter should attain the age of eighteen years the father should contribute directly to her support, and the wife should from that time receive but thirty dollars per month. The agreement further stipulated, among other things, for the payment to the wife of a certain sum in cash in advance, and for a division of the community property of the parties; and it was covenanted that thereafter the husband should not receive or claim any of the wife's property or effects then owned or thereafter earned or possessed by her, but that she might sell, dispose of, or bequeath the same during her life, or by will or otherwise, as fully and effectually as if sole and unmarried; and on the wife's part that she should not at any time, while the husband continued to perform the agreement, contract any debt or liability of any character for which the husband should be liable, nor claim any alimony. In conclusion, the parties bind themselves to the faithful performance of the conditions and obligations of said agreement, "provided, always, and it is hereby agreed that, if the said husband and wife should be reconciled and return to cohabitation, or if their marriage should be dissolved, then, in such case, all the covenants and conditions herein contained shall become void, but without prejudice to any act previously made or done hereunder," etc.

The court further found that on September 12, 1892,

respondent, the husband, " elected to revoke, and did revoke, said contract of separation, and requested that the marital relations between him and the said Grace Ella Sargent be resumed." This finding refers to and is based upon a letter or notice attached to the complaint as an exhibit addressed by respondent to the appellant at the city of Los Angeles, where they both were at the time, wherein appellant is informed by respondent that: "As provided by section 101 of the Civil Code, I now revoke and declare null and void an article of separation that was signed by us, dated April 26, 1890. As husband and father I elect that we make our home for the present in this city. In revoking this article of separation I also revoke every part thereof, particularly the clause that gives you the custody and care of the person of our daughter, Lillie; and as father, I shall exercise and assume such control myself, considering always the wishes of my wife, her mother. The payment of money I have been making you will cease."

Upon these findings, and others relating to the conduct and character of the respondent which we do not deem material to the question involved, the court concluded, as matter of law, that said agreement of separation "was revocable at the option of either of the parties thereto"; that the same was revoked by respondent by virtue of the letter above referred to declaring such revocation; that respondent, was entitled to have the same canceled and annulled, and that he was entitled to the custody and control of said minor.

Judgment was entered in conformity with these findings, and from it this appeal is prosecuted.

The only question presented by the appeal is whether the findings support the judgment.

The solution of the question, in the view taken and presented by both parties to the controversy in their briefs, depends upon the question whether the articles of separation between the parties were, or could be, revoked in the manner attempted. And this is the only question argued. The position taken by respondent,

and sustained by the court below, is that by virtue of section 101 of the Civil Code the respondent had the right to absolutely revoke his entire contract with appellant at any time by merely withdrawing his assent thereto and notifying appellant of the fact; and that this result was accomplished by sending the letter mentioned in the findings.

We do not regard the provision in question as having any such effect as was here attributed to it. That section is found in the chapter of the code entitled "Divorce"; and under the subdivision or title "Dissolution of Marriage," defining the causes for divorce. The six sections immediately preceding relate to desertion, and define what circumstances will, and what will not, constitute desertion. Section 99 provides that: "Separation by consent, with or without the understanding that one of the parties will apply for a divorce, is not desertion." Section 100 provides: "Absence or separation, proper in itself, becomes desertion whenever the intent to desert is fixed during such absence or separation." Then comes the section in question, 101, which provides: "Consent to a separation is a revocable act, and if one of the parties afterward, in good faith, seeks a reconciliation and restoration, but the other refuses, *such refusal is desertion.*"

It is obvious to our minds that, regarding the connection in which this latter section is placed, and the logical relation it bears to the antecedent provisions on the subject, it was intended simply to declare the effect of such revocation upon the legal status of the parties, as affecting that particular ground of divorce. Its effect is to put the recalcitrant spouse in default, and to give to the other a right which he did not have under the previously existing circumstances; a right which, if such refusal be persisted in for the statutory period, will ripen into a cause for divorce. That the effect of the section, and its only effect, is that declared in the language of the section itself, as above italicized, is, we think, plain.

This view is strengthened by reference to section 159 of the same code. That section provides: "A husband and wife cannot, by any contract with each other, alter their legal relations, except as to property, and except that they may agree in writing to an immediate separation, and may make provision for the support of either of them and of their children during such separation." There is nothing in this language to indicate an intention that the contract of separation there provided for shall be dependent for its subsistence upon the mere will of either spouse. To the contrary, the section provides in terms that the contract may provide for such separate maintenance *during such separation.* And that this was the construction put upon their contract by the parties themselves at the time of its execution is evidenced by its language, wherein it was provided " that if the said husband and wife shall be reconciled, and return to cohabitation, or if their marriage shall be dissolved, then, in such case, all the covenants and conditions herein contained shall become void," etc.

The contract in question is in conformity with the right given by section 159, and, until avoided by the mutual resumption of marital duties, or the divorce of the parties, it remains binding and obligatory upon the parties thereto as effectually as any other contract, subject only to the limitation imposed by section 101, as above indicated. In all other respects the contractual relation subsists intact. To hold that one competent to contract, who, upon a subject matter good in law, and for a sufficient consideration, enters into written stipulations and covenants of the most solemn character with another, should, the next moment, without pretense of fraud, mistake, or undue influence, or other cause than a mere change of mind, be permitted to absolutely withdraw from, and set at naught, such obligations, without regard to the desire of the other contracting party, would, to say the least, be a strong departure in the law of contracts.

There is no doubt that resumption of cohabitation would avoid the contract—as to all features, at least, remaining executory—even without any provision to that effect in the instrument, since the law itself attaches such consequence upon the theory that the consideration for the deed has failed. (*Wells* v. *Stoutt*, 9 Cal. 491; Schouler's Domestic Relations, sec. 218.) But there has been no such resumption here; the parties are still living separate; nor has the other contingency provided for in the contract—divorce—occurred. The contract must, therefore, be regarded as still subsisting and binding upon the parties.

And this binding character runs to the provision with reference to the custody of the child equally with any other feature. Parents have a right to contract with each other as to the custody and control of their offspring, and to stipulate away their respective parental rights; and such contracts are binding upon them. (Schouler's Domestic Relations, sec. 251; Bishop's Marriage, Divorce, and Separation, sec. 1169; *State* v. *Smith*, 6 Me. 462; 20 Am. Dec. 324; *Hunt* v. *Hunt*, 28 Ch. Div. 606.)

Whether such a contract could be permitted to interfere with or impede, in a proper case, that wide discretionary power given to courts in the disposition of the custody of children, in accord with their best interests, independently of the desire of a parent, may well be doubted. But that question does not arise in this case. While there are some matters of a loose and vague character in the pleadings tending to raise some such issue, it was apparently abandoned, since the findings and judgment proceed solely upon the theory that the contract had been revoked by respondent's act, and is therefore to be entirely disregarded for any purpose.

Nor does the question arise here as to the power of the court over the disposition of the child in the event of an action for divorce being instituted between the parties. Divorce is one of the contingencies under which, by the terms of the contract itself, its provisions

terminate. In the event of a divorce being granted, therefore, the question of the custody of the minor would be left at large for the disposition of the court, the same as if the contract had not existed.

It follows, from what has been said, that the findings do not warrant the annulment and setting aside of the articles of separation; nor was the plaintiff entitled thereunder to the custody of the child. The findings, therefore, do not sustain the judgment.

The judgment is reversed, and the cause remanded.

HARRISON, J., GAROUTTE, J., McFARLAND, J., and BEATTY, C. J., concurred.