[Civ. No. 2181.  Third Appellate District.—February 10, 1921.]

# LUKE SANGUINETTI, Respondent, v. MARTHA E. SANGUINETTI, Appellant.

[1] HUSBAND AND WIFE—CONTRACT—RELINQUISHMENT OF INTEREST OF WIFE IN PROPERTY—CONTINUANCE OF RELATIONSHIP—HOMESTEAD. In view of the provisions of sections 158 and 159 of the Civil Code, a husband or wife without entering into an agreement in writing for an immediate separation may convey to the other all title and interest in the community property or the separate property of the other, and where a wife for a valuable consideration, and in the absence of any unfair advantage taken by the husband, waives and relinquishes to him all of her interest in the community property and in his separate property, she cannot thereafter declare a homestead on any of the property, although they continue to live together as husband and wife.

APPEAL from a judgment of the Superior Court of Calaveras County. J. A. Smith, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. B. Curtin for Appellant.

Snyder & Snyder for Respondent.

BURNETT, J.—The action was brought to have it decreed that plaintiff is the owner of a certain described tract of land; that defendant has no right, title, or estate therein; that a certain declaration of homestead placed thereon by defendant is void, and that the same be canceled and annulled. Relief was granted as prayed for, and defendant has appealed from the judgment.

The basis of the action is found in this written agreement executed by the parties on June 6, 1916:

"This Agreement, made and entered into this 6th day of June, 1916, by and between Luke Sanguinetti of Vallecito, Calaveras County, California, the party of the first part, and Martha Sanguinetti his wife, of the same place, the party of the second part.

"Witnesseth: That whereas the parties hereto are husband and wife and have been such for several years past and have been residents of Vallecito, Calaveras County, Cali-

fornia, to this date, but their matrimonial relations have not been pleasant or agreeable and either is entitled to a divorce from the other and for the purpose of settling and adjusting their property rights, this agreement is made as follows:

"That the said Luke Sanguinetti as party of the first part, will on the execution of this agreement pay over to Martha Sanguinetti, the party of the second part, the sum of $5000.00 of which sum $500.00 has been paid leaving a balance of $4500.00 which will be paid upon the signing of this agreement and it is understood and agreed that the said Martha Sanguinetti takes and accepts said sum of $5000.00, of, and in lieu of and as the full relinquishment and conveyance and settlement of her community interest in all the property owned by both parties hereto whether situated in Calaveras County or elsewhere, and for the said $5000 the said Martha Sanguinetti remises, releases and quit-claims unto said Luke Sanguinetti all her right, title and interest existing at present or that she may be entitled to in the future of, in and to all real and personal property of every kind and nature owned by the parties hereto and in which the said Martha Sanguinetti has a community interest or would be entitled to have and she here expressly waives any and all claims to any future support, maintenance, care or liability of any kind from the party of the first part to her, and that she will contract no indebtedness or incur no bills of any kind or nature henceforth and in which the party of the first part will be liable, and in case he becomes liable for any other sum other than that herein mentioned, he shall have recourse to collect the same from the party of the second part in the manner provided by law for the collection of debts, and the said party of the second part takes and receives said sum in full settlement, of all property rights as between the parties hereto.

"Each party to this agreement hereby waives and relinquishes unto the other any and all right of inheritance or succession of, in and to the property that either might have or enjoy at the time of the death of either as this agreement fully settles all property rights now existing or that could hereafter inure to either party to the agreement.

"In Witness Whereof, the parties hereto have hereunto

set their hand and seal the day and year first above written."

It is not disputed that said contract was the deliberate and voluntary act of the parties and that plaintiff paid to defendant the said sum of five thousand dollars. It appears, also, that the parties were at the time and ever since have been living together as husband and wife. It is true that defendant was absent from home for nearly a year, but it was the occasion merely of a visit to a relative in the state of Washington and it was by consent of the plaintiff. In fact, appellant testified that respondent was always generous in his treatment of her and never objected to her visits away from home. The case, therefore, does not involve any separation of the parties agreed or otherwise, any desertion or kindred subject, but the situation is that the defendant for a valuable consideration waived and released to the plaintiff any possible interest she might have in his property or that of the community, and thereafter, while said contract was in full force and effect, she sought to impose upon a part of said property the charge or burden of a homestead, and this without any rescission of said contract or offer to restore the consideration which she had received.

The foregoing facts would seem to leave no doubt as to the legal soundness of the trial court's conclusion, but the learned counsel for appellant, who prepared said agreement of June 6th, believing, no doubt, in the right of married persons to execute such a contract, vigorously assails the judgment herein as opposed to the authorities and the principles of public policy.

The attack, however, is based upon an utterly untenable hypothesis. It assumes that the agreement of the parties was for a separation and that it was canceled by a reconciliation and resumption of the marital rights and privileges. In support of the claim appellant cites such cases as *Wells* v. *Stout,* 9 Cal. 479; *Sargent* v. *Sargent,* 106 Cal. 541, [39 Pac. 931]; *Jones* v. *Lamont,* 118 Cal. 499, [62 Am. St. Rep. 251, 50 Pac. 766]; *Estate of Martin,* 166 Cal. 399, [137 Pac. 2]; *Brown* v. *Brown,* 170 Cal. 1, [147 Pac. 1168].

In the first of these, the contract was admittedly a "deed of separation." It was claimed that such contracts were invalid. The authorities were reviewed, with his usual care

and learning, by Judge Field, and he concluded that, under the settled law of the United States, such agreements were not invalid. It was stated, however, that "if parties after separation become reconciled and live together, that fact will avoid the deed." But even that was unnecessary to the decision, since the supreme court held that the evidence was insufficient to show reconciliation.

The Sargent case also involved admittedly a separation agreement, and it was expressly provided therein that a reconciliation would render the contract void. The point in the case was, however, whether the contract "was revocable at the option of either of the parties thereto." This question the supreme court answered in the negative, and through Judge Van Fleet made this significant declaration: "To hold that one competent to contract, who, upon a subject matter good in law and for a sufficient consideration, enters into written stipulations and covenants of the most solemn character with another, should the next moment, without pretense of fraud, mistake, or undue influence, or other cause than a mere change of mind, be permitted to absolutely withdraw from, and set at naught, such obligations, without regard to the desire of the other contracting party, would, to say the least, be a strong departure in the law of contracts."

In *Jones* v. *Lamont* the agreement was also for separation, and the question decided was that the contract did not include a waiver or release of the right to succeed to all or any portion of the other's estate. The statement in the opinion, "The utmost that the law permits is that they may agree to live apart, and may make a valid contract as to their property, but this may be terminated at any moment by reconciliation which 'would avoid the contract— as to all features, at least, remaining executory' (*Sargent* v. *Sargent*, 106 Cal. 541, [39 Pac. 931])," must be regarded in connection with the preceding discussion in reference to the "divorce suit." Of course, it was not intended as an affirmation that there could be no division or settlement of the property rights of the parties independent of an agreement of separation.

In the Brown case, likewise, there was a written agreement of separation. It was quite properly held that the finding of the lower court to the effect that for some four

months after the execution of said agreement "the parties
agreed to become and were reconciled, that they thenceforth
for several months lived and cohabited together as husband
and wife, and that in pursuance of the agreement to so
live they further orally agreed to and did set aside and
annul said agreement," was sufficient to support the con-
clusion that said oral agreement was executed and that it
resulted in the cancellation of the previous written agree-
ment. As to this, indeed, there is hardly room for a
difference of opinion.

[1] Some other cases from different jurisdictions are
cited, but they need not be specifically mentioned. In fact,
the matter is regulated and determined by the statutory
provisions of the various states. What may be the rule
elsewhere or what the common or civil law teaches on the
subject might be interesting, but the controlling thing here
is what is found in our statute and its interpretation
by the courts. In fact, it would seem hardly necessary
to go beyond the language of section 158 of the Civil Code,
as follows: "Either husband or wife may enter into any
engagement or transaction with the other, or with any other
person, respecting property, which either might if unmar-
ried; subject, in transactions between themselves, to the
general rules which control the actions of persons occupying
confidential relations with each other, as defined by the
title on trusts." As there is no claim of any advantage
being taken by the husband in securing said contract, we
may ignore the latter portion of said section. That unmar-
ried persons could lawfully enter into such a contract can-
not, of course, be disputed. It simply involves, as we have
seen, the conveyance of all interest in real property, a fre-
quent and familiar proceeding.

But it seems to be thought that this conclusion, as far
as the community property is concerned, is affected and
limited by the next section, as follows: "A husband and
wife cannot, by any contract with each other, alter their
legal relations, except as to property, and except that they
may agree, in writing, to an immediate separation, and
may make provision for the support of either of them and
of their children during such separation." It is to be
observed, however, that the clause permitting them to alter
their "legal relations" in reference to property is not con-

nected with or modified by the provision relating to an agreement for a separation. It might be a fair construction to hold that a contract for the support of either or of the children, in order to be valid, must be coupled with an agreement of separation, but to make this latter contingency a precedent condition for the validity of a contract for the disposition of the community property is to do violence to the language of the section. The law prescribes no such limitation. The plain terms of the statute authorize the husband or the wife to convey to the other all title and interest in either separate or community property.

If any confirmation were needed for a construction that seems unavoidable we may find it in such cases as *Wickersham* v. *Comerford,* 96 Cal. 433, [31 Pac. 358] ; *Wren* v. *Wren,* 100 Cal. 276, [38 Am. St. Rep. 287, 34 Pac. 775] ; *Hoeck* v. *Greif,* 142 Cal. 119, [75 Pac. 670] ; *Estate of Martin,* 166 Cal. 399, [137 Pac. 2].

We may add that while not authoritative, the decision of Judge Coffey, together with the note 'attached thereto in the *Estate of Menihan,* reported in volume 6, page 535, of Coffey's Probate Decisions, is interesting and instructive.

Moreover, the whole argument of appellant is based upon the assumption that community property is involved in the controversy; but the court found that it was the separate estate of the husband. It is not disputed that this finding is supported by the evidence, and, assuredly, it would not be contended that the wife is not authorized by said section 158 to release to her husband whatever title or interest she might have been his separate property.

As before indicated, in view of the duty imposed upon the husband by sections 174 and 175 of the Civil Code, there may be some doubt whether the waiver of support would be binding while the parties are living together, but that part of the agreement is not involved in this controversy, and it manifestly does not affect the legal integrity of the provisions in reference to the property.

Some contention is made that the parties were bound by the recital in their agreement that "their matrimonial relations have not been pleasant and agreeable" and that the finding of the court to the contrary constitutes serious error. It is apparent, however, that this is a matter of no moment.

The consideration for the wife's agreement was the payment to her of the sum of five thousand dollars and the statement as to their relations may be entirely ignored. Moreover, notwithstanding said recital, the defendant testified that their relations were pleasant and satisfactory, and she is hardly in a position to complain if the court accepted her statement in that particular.

We have read with care the interesting briefs of appellant, but we think they have entirely missed the mark.

The judgment is affirmed.

Prewett, P. J., *pro tem.*, and Hart, J., concurred.