[S. F. No. 12201. In Bank.—April 13, 1927.]

In the Matter of the Estate of ROBERT BOESON, Deceased. ELEANOR BOESON, Appellant, v. STATE OF CALIFORNIA, Respondent; FIN LUND, Consul of Denmark, Intervener.

[1] DIVORCE—SEVERANCE OF MARITAL RELATION—INTERLOCUTORY DECREE—DISPOSITION OF PROPERTY—TIME—FINAL DECREE.—The obtaining and entry of an interlocutory decree of divorce does not sever the marital relation, and any disposition of property made thereby becomes effective only upon the entry of the final decree.

[2] ID.—DEATH OF HUSBAND—RIGHTS OF WIFE.—Until the entry of a final decree of divorce the property rights of the parties, in the absence of a property settlement between them, remain as they were before the entry of the interlocutory decree, and the death of the husband does not cut off the right of the wife to succeed to the husband's estate as his heir.

[3] ID.—ESTATES OF DECEASED PERSONS—INTERLOCUTORY DECREE OF DIVORCE—ESTATE LESS THAN $2,500—RIGHT OF WIDOW TO.—An interlocutory decree of divorce of itself does not deprive the wife of the right to require the transfer to her of an estate of less than $2,500 under the provisions of section 1469 of the Code of Civil Procedure, nor limit her privilege to claim the benefit of rights conferred by other code sections pertaining to family allowance; and before a court may legally deny her an assignment by way of family allowance it must appear that she not only has ceased to constitute a member of the family of the husband by virtue of a separation or interlocutory decree of divorce, but also that she has lost the right to seek support and maintenance from him by reason of her conduct, such, for example, as her abandonment of him, or her voluntary surrender of the right to support.

[4] ID.—HUSBAND AND WIFE — SETTLEMENT OF PROPERTY RIGHTS. — Property settlements between husband and wife, whereby the wife parts with her right to share in the estate of the husband and relinquishes her right to a family allowance, are recognized as valid and enforceable by courts when founded upon a sufficient consideration and fairly made.

1. See 9 Cal. Jur. 757; 9 R. C. L. 442.
2. See 9 Cal. Jur. 760.
3. See 11 Cal. Jur. 498.
4. See 9 Cal. Jur. 826; 11 Cal. Jur. 506. See, also, 9 R. C. L. 524.

[5] ID.—AGREEMENT OF SETTLEMENT—TIME OF OPERATION. — When the parties to divorce proceedings execute agreements of settlement of property rights in connection with the entry of the interlocutory decree they are not required to postpone their operation until the marital tie shall have been severed by the entry of the final decree, but they may provide that they shall become effective upon execution.

[6] ID. — RATIFICATION OF PROPERTY SETTLEMENT — JURISDICTION OF COURT.—The divorce court possesses jurisdiction to determine the validity of an agreement between husband and wife settling their property rights.

[7] ID.—SETTING ASIDE PROPERTY SETTLEMENT — REVOCATION — EVIDENCE.—Property settlements entered into between a husband and wife upon a separation should be set aside in cases where the acts, conduct, and relations of the parties thereafter show a resumption of marital rights, duties, and obligations and are of such a character as to justify the conclusion that they intended and· agreed orally to abrogate the same; but before a court may indulge in a presumption of revocation, the evidence offered to establish full resumption of marital relations must be sufficient to satisfy the mind of the court that such was the intent of the parties.

[8] ID.—RESUMPTION OF MARITAL RELATIONS—INSUFFICIENCY OF EVIDENCE.—The fact that a husband against whom an interlocutory decree of divorce had been granted on occasions spent the night with his wife at her residence and upon occasions ate meals with her there and assisted her in making minor repairs about the premises does not show such a resumption of marital rights, duties, and obligations as to abrogate the property settlement between them upon a separation and entitle the wife to have the estate of the husband, which is less than $2,500, set aside to her.

[9] ID.—ESTATE OF DECEASED PERSON—APPLICATION TO SET ASIDE TO WIDOW—APPEARANCE BY FOREIGN CONSUL.—Upon an application to set aside the whole estate of a deceased person to the widow, upon the ground that it is less than $2,500 in value, in which proceeding an issue as to the widow's right is raised by an answer of the State of California, there is no error in allowing the consul of the country of the decedent's nativity, who is endeavoring to locate heirs of decedent in said country, to appear and offer evidence in the proceeding against the petitioner's application.

[10] ID.—PLACE OF RESIDENCE — EVIDENCE — ADVERTISEMENT. — In such a proceeding, there was no error in excluding from evidence an undated advertisement from a newspaper, offered by the ap-

7.  See 9 Cal. Jur. 828.

plicant, wherein it was claimed decedent gave his wife's place of residence as his place of residence, it being contended that the advertisement was caused to be published by decedent at a time subsequent to the granting and entry of the interlocutory decree of divorce and after the execution of the property settlement, and was material as a fact showing resumption of marital relations, but the evidence as to the date was unsatisfactory, no effort was made to furnish the best and most satisfactory evidence, of the date, which was the entire newspaper, and the evidentiary value of the advertisement was not sufficient to change the court's conclusion on the merits of the case.

(1) 19 **C. J.**, p. 185, n. 1, p. 338, n. 22.    (2) 18 **C. J.**, p. 859, n. 38; 19 **C. J.**, p. 331, n. 98 New.    (3) 24 **C. J.**, p. 241, n. 28, p. 255, n. 85 New, 89, p. 256, n. 96 New.    (4) 19 **C. J.**, p. 340, n. 58; 24 **C. J.**, p. 252, n. 64.    (5) 19 **C. J.**, p. 340, n. 60.    (6) 19 **C. J.**, p. 340, n. 59 New.    (7) 24 **C. J.**, p. 253, n. 68 New; 30 **C. J.**, p. 657, n. 60, p. 658, n. 71.    (8) 19 **C. J.**, p. 436, n. 42.    (9) 4 **C. J.**, p. 926, n. 10; 24 **C. J.**, p. 242, n. 35 New.    (10) 24 **C. J.**, p. 266, n. 2 New.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a petition to set aside the entire estate of a decedent to the widow. Frank H. Dunne, Judge. Affirmed.

The facts are stated in the opinion of the court.

Byron Parker, Thomas Wicks and A. M. More for Appellant.

U. S. Webb, Attorney-General, and Lionel Beale Browne for Respondent.

Eric Lyders for Intervener.

SEAWELL, J.—Appellant prosecutes this appeal from an order made by the court below denying her petition to have the estate of Robert Boeson, deceased, assigned to her, as his widow, under the provisions of section 1469 of the Code of Civil Procedure, which authorizes a transfer of estates of less than $2,500 to the widow of a decedent upon the return of the inventory. The rights of a minor are in nowise involved in this proceeding. The court's action denying the petition was based on the proposition that ap-

pellant, although the widow of decedent, had deprived herself of the right to receive any portion of his estate by the terms of a property settlement previously entered into by them. Appellant admits the execution of said property settlement and does not dispute the interpretation placed upon it by respondents and the court below, nor does she question its validity. She contends, however, that said settlement, which was executed by decedent and herself on the day she procured an interlocutory decree of divorce from him, was not in effect at the time of his death, but had been revoked by a subsequent reconciliation of matrimonial differences and an oral understanding that it should not longer be determinative of their property rights as husband and wife. Respondents deny the fact of subsequent reconciliation and resumption of marital rights, duties, and obligations.

The Consul of Denmark appeared at the hearing on the petition to set aside the estate to appellant and informed the court that efforts were being made to ascertain if decedent left any heirs residing in Denmark, the supposed country of his nativity. Although he had filed no written petition or pleading in the case, and admitted that he was not representing any particular heirs of decedent, said Consul was permitted, over the objections of appellant, to oppose her claim and to introduce evidence at the hearing. This action is assigned as error.

The decedent and appellant intermarried on October 30, 1920, and on May 31, 1921, appellant was granted an interlocutory decree of divorce from her husband on the ground of his extreme cruelty. The decree was not filed and recorded until August 3, 1921, almost two months after it had been granted. The property settlement was executed on the day the divorce was granted. The agreement contained certain preliminary recitals to the effect that unhappy differences had arisen between the parties and they had been living separate and apart and did not contemplate living together again, and that there was no community property save and except certain household furniture of the value of $50. The appellant, "in consideration of the sum of $10 in hand paid by the party of the second part [decedent]," receipt of which was acknowledged, released decedent from all obligation to support and maintain her

from the date of the agreement "until the end of the world," and agreed that in the event of filing an action for divorce she would not seek or accept temporary or permanent alimony. The provision regarding the rights of each party to the agreement in the estate of the other is contained in the following paragraph:

"That said parties herein each hereby waive any and all right in the estate of the other and forever quitclaim any and all right to share in the same of the other by the laws of succession and that each of said parties hereby waive any and all rights of homestead in the real property of the other and that said parties herein waive any and all right to the estate or any interest in the estate of the other for a family allowance or by way of inheritance and that from the date of this agreement to the end of the world said waiver of the other in the estate of said other party shall from this date be effective and they shall have all the rights of single persons and maintain the said relationship of such toward each other."

The furniture, valued at $50 and declared to constitute the only community property of the marriage, was assigned to appellant by said property agreement. The interlocutory decree of divorce contained a provision approving and confirming said property settlement. Neither party to the divorce proceeding applied for a final decree. The husband died intestate on April 10, 1923, almost two years after the interlocutory decree had been granted. Letters of administration were thereafter issued to the public administrator. In explanation of her failure to apply for letters of administration appellant testified that she relied on her attorney to protect her in this as in all other matters.

[1] The obtaining and entry of an interlocutory decree of divorce does not sever the marital relation, and any disposition of property made thereby becomes effective only upon the entry of the final decree. (*Estate of Dargie,* 162 Cal. 51 [121 Pac. 320] ; *Estate of Seiler,* 164 Cal. 181 [Ann. Cas. 1914B, 1093, 128 Pac. 334].) [2] Until the entry of the final decree the property rights of the parties, in the absence of a property settlement between them, remain as they were before the entry of the interlocutory decree, and the death of the husband does not cut off the right of the wife to succeed to the husband's estate as his heir. [3]

Nor does the interlocutory decree of itself deprive the wife of the right to require the transfer to her of an estate of less than $2,500 under the provisions of section 1469 of the Code of Civil Procedure, nor limit her privilege to claim the benefit of rights conferred by other code sections pertaining to family allowance. · (*Estate of Breitter,* 69 Cal. App. 424 [231 Pac. 351]; *Estate of Gould,* 181 Cal. 11 [183 Pac. 146].) Before a court may legally deny her an assignment by way of family allowance it must appear that she not only has ceased to constitute a member of the family of the husband by virtue of a separation or interlocutory decree of divorce, but also that she has lost the right to seek support and maintenance from him by reason of her conduct, such, for example, as her abandonment of him, or her voluntary surrender of the right of support. (*Estate of Miller,* 158 Cal. 420 [111 Pac. 255]; *In re Noah,* 73 Cal. 583 [2 Am. St. Rep. 829, 15 Pac. 287]; *Estate of Yoell,* 164 Cal. 540 [129 Pac. 999]; *Estate of Bose,* 158 Cal. 428 [111 Pac. 258].) **[4]** Property settlements between husband and wife, whereby the wife parts with her right to share in the estate of the husband and relinquishes her right to a family allowance, are recognized as valid and enforceable by courts when founded upon a sufficient consideration and fairly made. (Sec. 158, Civ. Code; *In re Davis,* 106 Cal. 453 [39 Pac. 756]; *Estate of Edelman,* 148 Cal. 233 [113 Am. St. Rep. 231, 82 Pac. 962]; *Estate of Brix,* 181 Cal. 667 [186 Pac. 135].) **[5]** When the parties to divorce proceedings execute such settlements in connection with the entry of the interlocutory decree they are not required to postpone their operation until the marital tie shall have been severed by the entry of the final decree, but they may provide that they shall become effective upon execution. (*Gould* v. *Superior Court,* 47 Cal. App. 197 [191 Pac. 56].) In the instant case the parties to the agreement provided that the rights of each to inherit from the other or to claim the estate of the other by virtue of the sections of the code providing for a family allowance should be terminated and that the agreement of termination should become immediately effective irrespective of whether or not a final decree of divorce should be entered.

**[6]** Appellant does not attack the validity of the property settlement. The divorce court possessed jurisdiction to

determine the validity of said settlement and in the exercise of this jurisdiction it ratified and approved the same.  (See *Locke Paddon* v. *Locke Paddon*, 194 Cal. 73 [227 Pac. 715]; *Loveren* v. *Loveren*, 106 Cal. 509 [39 Pac. 801]; *McCahan* v. *McCahan*, 47 Cal. App. 176 [190 Pac. 460].)

Although appellant in her reply brief expressly states that she does not dispute the soundness of the foregoing principles of law, all of which are well settled, she cites the court to *Estate of Breitter*, 69 Cal. App. 424 [231 Pac. 351], and insists that that case rules the instant case and impels a decision in her favor.  Appellant has misapplied the principle announced in *Estate of Breitter* to the instant case. It was not there held that a wife who by contract has surrendered the right to receive support from her husband and to claim a family allowance from his estate may, notwithstanding her contract, claim a family allowance.  No question of a separation agreement was before the court.  The case is authority only for the proposition that a wife who is compelled to live apart from her husband by reason of his dereliction, or is authorized so to do by an interlocutory decree of divorce obtained against him, does not thereby lose her right to a family allowance for the benefit of the family.

It is apparent that the only way in which appellant may succeed, having surrendered by contract the rights she seeks by her action to rehabilitate (no interests of minor children of the marriage being involved), is by establishing a subsequent abrogation of the property settlement by showing a reconciliation and resumption of marital rights, duties and obligations. **[7]** Property settlements entered into by the spouses, it is true, should be set aside in cases where the acts, conduct, and relations of the parties thereafter are of such a character as to justify the conclusion that they intended and agreed orally to abrogate the same. (*Wells* v. *Stout*, 9 Cal. 479; *Sargent* v. *Sargent*, 106 Cal. 541 [39 Pac. 931]; *Jones* v. *Lamont*, 118 Cal. 499 [62 Am. St. Rep. 251, 50 Pac. 766]; *Estate of Martin*, 166 Cal. 399 [137 Pac. 2]; *Brown* v. *Brown*, 170 Cal. 1 [147 Pac. 1168]; 2 Schouler on Marriage, Divorce, Separation and Domestic Relations, p. 1560.)  Before a court may indulge in a presumption of revocation, however, the evidence offered to establish full resumption of marital relations must be suffi-

cient to satisfy the mind of the court that such was the intent of the parties. Applying this rule to the facts of the instant case, it cannot be said that the court's conclusion that appellant failed to establish her case is not amply supported by the record.

[8] Appellant testified that at the time the interlocutory decree was granted she was residing in a seven-room house which she owned as her separate property; that she continued to reside in said house after the granting of the decree, renting all rooms in the house, except the dining-room and kitchen, to tenants; that she and decedent became reconciled about September, 1921; that decedent did not make his home with her because of the crowded conditions of her living quarters, but that he visited her, sometimes as frequently as two or three times a week, upon occasions took her to theaters, ate meals with her at her residence and occasionally spent the night with her there; that it was the mutual desire of decedent and herself that she should sell her house and that they should then build a cottage at Palo Alto, where she believed her health, which was poor, would improve; that she did not wish to reserve a larger number of the rooms in her house for her own use, so that her husband might live with her, because she believed that the house would sell more readily if most of the rooms were rented, and that decedent offered to contribute to her support, but she refused his offers because she wished him to save as much as possible to be used later in building the house at Palo Alto. It appears that appellant derived an income from giving music lessons and from rentals of her house which was sufficient to meet her needs.

Four witnesses, on behalf of appellant, testified that they had seen decedent about appellant's house, had occasionally observed him eating with appellant and had seen him hanging pictures and otherwise conducting himself in a manner which would indicate that they had resolved their matrimonial differences. Two of these witnesses were friends of appellant, the third was a friend and a music pupil, and the fourth was a niece. One of the friends saw decedent at the house only three times, although she testified that she visited there frequently. The other friend had not seen decedent since October, 1921. The music pupil had ceased to take lessons from appellant in January, 1922, and had

not seen decedent since that time. The niece testified that decedent was "peculiar" and that he visited appellant on friendly terms even while the divorce proceedings were pending.

The Consul of Denmark, who opposed appellant's application on behalf of unknown heirs in Denmark, introduced two witnesses. George Hildenbrand, from whom decedent rented the housekeeping apartment which he occupied and in which he was found dead, testified that decedent kept his trunk, clothing, and working tools in said apartment and sometimes cooked his meals there. Decedent first went to live at this apartment on May 31, 1921. On November 2, 1921, he left the apartment and went to live at the residence of Peter Miller, who had been his friend for twenty-five years. He stayed at the Miller home until May 27, 1922, when he returned to Hildenbrand's, where he remained until his dead body was discovered by Hildenbrand lying upon his bed. Hildenbrand, who was accustomed to see Boeson every day or two, noting his absence, made the investigation which resulted in the discovery above recited. He had probably been dead two days. Hildenbrand testified that decedent had made casual reference to his married life in his conversations with him and had stated that it had proved unsuccessful. The witness testified that Boeson said to him at the time he first came to his apartment that in a money transaction with his wife she had wrongfully obtained $800 of his money and that he was afraid to live with her; that he "was tired of that kind of business"; that he would never again marry, and that he was "through" with appellant. This witness further testified that appellant said to him after Boeson's death that she could not live with Boeson because of his habitual failure to observe certain essential rules with respect to his person. The witness did not know appellant's place of residence and had never seen her until after Boeson's burial. Appellant had no knowledge of his death until several days after he was buried. Witness Miller testified that he had known Boeson, the decedent, for more than twenty-five years and that decedent resided with him from November, 1921, to May, 1922, and during that time he did not speak to the witness concerning his wife. The latter did not call to see Boeson at any time within the knowledge of the witness.

Giving the fullest effect possible to the facts testified to by appellant, it appears from her testimony that she and decedent had not established a matrimonial domicile at the residence owned by her or at any other place. The fact that decedent on occasions spent the night with appellant at said residence and upon occasions ate meals with her there and assisted her in making minor repairs about the premises does not establish said residence as the matrimonial domicile of the parties. In the course of her testimony appellant stated that decedent went to "his house" and to "his place," thus showing that she did not regard her residence as a matrimonial domicile. While the lack of a fixed joint domicile will not under all circumstances prevent the existence of a state of marital cohabitation, it is a factor to be considered. Appellant also stated that she refused decedent's offer to contribute to her support. She gave as a reason for the refusal a desire that his earnings be saved to be used in building a home at Palo Alto. The fact remains, however, that they did not constitute a joint economic unit, such as is usual where two persons are living together as husband and wife. The court below, in denying appellant's application, may well have considered the circumstance that although the intention to resume marital relations, according to appellant's testimony, was formed in September, 1921, a joint matrimonial domicile had not been established in April, 1923, more than a year and a half later, when Boeson died. Appellant also stated that decedent visited her on the Saturday night before his death and that she was not informed of his death until the following Wednesday. By the testimony of another witness the day of decedent's demise was fixed as Sunday, April 10, 1923. Although appellant testified that she had decedent's telephone number and that they had planned a trip to Palo Alto for the Sunday on which he died, it does not appear that she had made any effort to locate him up to the following Wednesday, when she was informed of his death. Such seeming indifference on her part does not add strength to her case. A wife's interest in a husband would at least prompt some inquiry as to the reason for his failure to meet an important appointment. Unquestionably her marital interest should become aroused before the expiration of three

days with no word of explanation as to the cause of her husband's absence.

Appellant also testified that decedent asked her whether it was necessary for them to be remarried and she replied, "No, that was not necessary," because "I thought this way, if he didn't do what he said he was, all I would have to do was to go back and get the final." Such a statement evidences an unstable mental attitude which is wholly inconsistent with the legal requirement that matrimonial relations must actually in good faith have been resumed.

[9] A determination of the merits of appellant's contention that the Consul of Denmark did not have a sufficient interest in the matter to introduce witnesses in opposition to appellant's claim is not necessary to the decision of this case. Said Consul filed no written petition or pleading in the case. At the hearing he stated that he did not represent any known heirs of decedent residing in Denmark, the supposed country of his nativity, but efforts were being made to ascertain the location of heirs of decedent residing in said country, and that he asserted the right to appear on behalf of such unknown and undiscovered heirs. The court thereupon permitted said Consul to offer witnesses Hildenbrand and Miller. The question whether appellant was entitled to have decedent's estate set aside to her as his surviving widow was put in issue by appropriate allegations in her petition which were controverted by averments in the answer of respondent State of California denying that decedent left surviving him a wife entitled to his estate under the provisions of section 1469, Code of Civil Procedure. If all evidence offered by the Consul of Denmark had been excluded, and only evidence introduced by appellant to substantiate her claim remained to be considered, it would be insufficient to sustain a judgment in her favor. Since the evidence offered by the Consul cannot affect the decision, any error in its admission was without prejudice to appellant. We are inclined to the view, however, that it was not error to permit said Consul to oppose appellant. By virtue of his office he is charged with the duty of protecting in this country the rights of subjects of Denmark, and he is acting within the scope of his duties when he endeavors to locate in Denmark persons who are heirs of decedents dying in this country. If, before said heirs have

been located and before such a period of time has elapsed as to render it highly improbable that heirs will ever be found, proceedings are initiated which may jeopardize their rights, we believe that it is sound practice to afford the Consul an opportunity to fully protect them. Our treaty with the Kingdom of Denmark, to say nothing of the comity that exists between nations, would justify such a course.

[10] Appellant offered an undated advertisement taken from a San Francisco newspaper, wherein, it is claimed, decedent gave his wife's place of residence as his place of residence. It was contended that the advertisement was caused to be published by decedent at a time subsequent to the granting and entry of the interlocutory decree of divorce and after the execution of the property settlement and was material as a fact showing resumption of marital relations. The witnesses who were called to fix the date of publication as being after rather than prior to the signing of the property settlement were rather uncertain as to the time of publication. Besides, the best and most satisfactory evidence as to the actual date of the publication of the advertisement was obtainable and no effort was made to furnish it. The entire newspaper containing the advertisement was not offered, but merely an undated, detached clipping. We think the ruling was correct, and at any rate its evidentiary value, even though appellant's contention be correct, was not sufficient to change the court's conclusion on the merits of the case.

The order appealed from is affirmed.

Richards, J., Shenk, J., Curtis, J., Preston, J., Langdon, J., and Waste, C. J., concurred.