[Civ. No. 8458.   Third Dist.   Nov. 24, 1954.]

BARBARA M. COFFER, Respondent, v. D. W. LIGHT-FORD, as Administrator, etc., Appellant.

Spurr & Brunner for Appellant.

Burke & Rawles and John E. Nelson for Respondent.

WARNE, J. pro tem.*—This is an appeal from a money judgment rendered against appellant as Administrator of the Estate of Roy Coffer, deceased, in an action brought by respondent upon an account stated between her husband and his father, the deceased, Roy Coffer, and which was awarded to her by the provisions of an interlocutory decree of divorce.

The action was brought against Roy Coffer who died during the pendency of the action. Pursuant to application of the plaintiff, and order of the trial court thereon, the action was revived and continued against the defendant and appellant, as administrator with the will annexed of the estate of said deceased. It appears from the evidence that the deceased and his son, Clyde, during the year 1948 became partners in the operation of a sawmill, and that respondent and her husband, Clyde, loaned something in excess of $3,000 to the partnership. The enterprise was unsuccessful, and the partnership was dissolved. In settlement of the partnership affairs the deceased, Roy Coffer, on July 12, 1949, entered into an agreement in writing whereby Roy Coffer, the deceased, agreed to pay to Clyde Coffer "Four dollars ($4.00) per thousand feet on all lumber sold until the sum of Four Thousand ($4,000.00) dollars has been received by the second party [i.e., Clyde]."

The agreement was to take effect after the first 100,000 feet of lumber had been cut. There is nothing in the record to show this agreement was ever carried out. While it is doubtful if the agreement can be classified as an account stated, the parties to the action construed it as such throughout the entire proceedings.

*Assigned by Chairman of Judicial Council.

Respondent filed an action for divorce against her husband, Clyde, in the Superior Court of Nevada County, and on March 3, 1950, was granted an interlocutory decree of divorce which awarded her the community property "immediately," a portion of which was described as follows: "An agreement for the payment of the sum of $4,000.00 to the defendant, dated July 12, between Roy Coffer and the defendant herein, from the proceeds of the sawmill belonging to said Roy Coffer." There is no evidence as to whether or not an appeal was taken from the interlocutory decree or if relief therefrom was sought under the provisions of section 473 of the Code of Civil Procedure within the time provided by law. Respondent testified that this decree became final; however, after she so testified an objection was made to her answer, and the court sustained said objection upon the ground that it called for her conclusion; however, no motion was made to strike the answer, and it is therefore a part of the record. (53 Am.Jur., Trial, p. 118; 3 Jones on Evidence, 1668-1669, § 895.)

In July of 1951 the parties were remarried; however, there is no testimony in the record as to the date of the reconciliation or if the parties agreed to, or intended to nullify the provisions of the interlocutory decree as to the disposition of the community property. It is a very strong and reasonable inference, as noted by the trial court in his order for preparation of findings, that the fact of a remarriage indicated that a final decree had been actually entered, otherwise there would have been no necessity for such remarriage.

Appellant contends that a reconciliation between the parties to a divorce action, after the entry of an interlocutory decree, but before a final decree of divorce has been entered, operates to nullify and void "any contract made for the parties by the interlocutory decree," including any adjudication or attempted adjudication of the property rights and community property of the parties by such interlocutory decree. In support of this contention he cites such cases as *Brown* v. *Brown,* 170 Cal. 1 [147 P. 1168]; *Estate of Boeson,* 201 Cal. 36, 42-43 [255 P. 800]; *Estate of Brimhall,* 62 Cal. App.2d 30, 35 [143 P.2d 981]; *Peters* v. *Peters,* 16 Cal.App.2d 383, at 386-387 [60 P.2d 313]. A careful reading of these cases will not bear out appellant's contention. In the Brown case it appears that the parties lived and cohabited together as husband and wife and "that in pursuance of the agreement to so live they further orally agreed to and did set aside and

annul said agreement." In the Boeson case, *supra*, the court stated: "Property settlements entered into by the spouses, it is true, should be set aside in cases where the acts, conduct, and relations of the parties thereafter are of such a character as to justify the conclusion that they intended and agreed orally to abrogate the same." In the *Estate of Brimhall* the contention was "That the property settlement agreement was terminated because subsequent to the execution thereof appellant and her husband cohabited as husband and wife." The court held: "This proposition is also untenable. The law is established in California that a husband or wife may enter into any transaction with the other respecting property the same as if they were unmarried, subject to the general rules which control the actions of persons occupying confidential relations with each other. (Section 158, Civ. Code; *Stoff* v. *Erken*, 25 Cal.App. 528, 530 [144 P. 312].)" In the Peters case, *supra*, the record shows that the parties in good faith commenced to live together, did actually resume marital relations, and intended to cancel the prior adjustment of their property rights, and that appellant actually took steps to have the property rights of the parties restored to their predivorce status. We are satisfied that defendant's contention cannot be sustained upon the record in the instant case. ■ When the time had elapsed for taking an appeal or seeking relief under the provisions of section 473 of the Code of Civil Procedure, in the absence of some agreement, oral or written, between the parties that the award of the community property to respondent should become a nullity, the property in question vested in respondent regardless of the fact of reconciliation and remarriage. This is in line with the rule laid down in the case of *Leupe* v. *Leupe*, 21 Cal.2d 145, 150 [130 P.2d 697], or, as stated in the case of *Wilson* v. *Wilson*, 76 Cal.App.2d 119, 132 [172 P.2d 568]: "We need not decide in this case whether it was error to make an immediate assignment of property in the interlocutory decree or whether the right to so dispose of the property of the parties was within the discretion of the court. The time for appeal having elapsed, the determination of property issues in the interlocutory decree became final and was no longer subject to modification except in accordance with the methods applicable to judgments generally."

■ The chose in action being the separate property of the respondent she had the right to maintain the action without joining her husband as a party. (Code Civ. Proc., § 370.)

While the disposition of this appeal is not dependent upon a determination of the effect of the reconciliation and remarriage of the respondent, we have nevertheless discussed the question so that the trial court may have the benefit of our views concerning the matter on a retrial of this case.

■ Appellant's defense on the merits was that the account stated was paid or discharged, and in support thereof the following instrument executed by respondent's husband was introduced in evidence:

"January 16, 1950

"The agreements of July 12, 1948 and May 1, 1948 for the sum of four thousand ($4,000.00) dollars, is paid in full as of now. Jan. 16, 1950

"Clyde M. Coffer"

This document was offered and received in evidence as defendant's exhibit "A." Respondent's husband was permitted to testify, over objection, that this writing, the authenticity of which is admitted, lacked consideration and was executed solely for the purpose of defeating any claims to his father's sawmill that respondent might make in her pending divorce action. The damaging effect of this testimony is manifest. If believed by the trial court, as it obviously was, it completely destroyed appellant's defense of payment and discharge. The admission of this testimony was erroneous and prejudicial to appellant, even though there may have been other evidence tending to show that the account had not been paid, the sufficiency of which we do not need to decide upon this appeal. Respondent had the burden of proving by a preponderance of the evidence that there was a want of consideration (Civ. Code, § 1615) for the discharge of which the written instrument was presumptive evidence. (Civ. Code, § 1614.) There is no merit in respondent's claim that appellant waived the protection of section 1880 of the Code of Civil Procedure because appellant had respondent's husband identify his signature on the written instrument. ■ The examination of a party as to the authenticity or identification of a document does not waive the provisions of the section mentioned. (*Kains* v. *First Nat. Bank,* 30 Cal.App.2d 447, 450 [86 P.2d 935]; *Moore* v. *Spremo,* 72 Cal.App.2d 324, 329 [164 P.2d 540]; 159 A.L.R. 411, 415, 416.) *Lucy* v. *Lucy,* 22 Cal.App.2d 629 [71 P.2d 949], and *Moul* v. *McVey,* 49 Cal. App.2d 101 [121 P.2d 83], cited by respondent, are inapplicable because appellant did not interrogate respondent's

husband as to the circumstances surrounding the execution of the written instrument which was pleaded as a defense to respondent's cause of action. Therefore, respondent had no right to do so, and the trial court erred in overruling appellant's objections to such testimony. █ Respondent argues that she is not the assignee of her husband and therefore that the inhibition of section 1880 of the Code of Civil Procedure is not applicable in the instant case, it being her claim that the judgment of the Superior Court of Nevada County in the divorce proceedings is open to the interpretation that such decree produced an involuntary relinquishment of the parties' community interests. We have not been able to find authority to support respondent's contention. It seems to be a matter of first impression. We do not agree with respondent. Section 146 of the Civil Code provides that in case of the dissolution of the marriage by decree of the court, the community property shall be *assigned*, and then makes provisions as to how and in what manner the assignment shall take effect. If we are to give to the word ''assign'' as used in the statute its ordinary usual meaning, the respondent became the assignee of her husband through an involuntary assignment made by the court, and his testimony then became subject to the inhibition of section 1880. The effect of what we have said is clearly within the purpose and meaning of subdivision 3 of section 1880 of the Code of Civil Procedure. As stated in *Moul* v. *McVey*, 49 Cal.App. 2d 101, 105 [121 P.2d 83], ''The object of the statute is to so balance rights as between the survivor and the deceased that no advantage may be taken of a deceased person because of the fact that his lips are sealed by death, . . .'' The witness Clyde Coffer stood in exactly the same position as if he had been a voluntary assignor through an instrument of formal assignment. Further, we must not lose sight of the fact that respondent had a community interest in the chose in action prior to the divorce proceedings. Clearly at that time the inhibition of the statute would have been applicable and we see no reason for holding that it did not continue after the court in the divorce proceedings had assigned it to her.

As this case must be reversed for the reasons above stated, we do not deem it necessary to consider the remaining contentions made by the appellant.

Judgment reversed.

Van Dyke, P. J., and Schottky, J., concurred.