Argued December 19, 1945; reargued February 13; reargued March 5; modified March 27; rehearing denied April 23, 1946

## COGSWELL *v.* COGSWELL ET AL.

(167 P. (2d) 324)

*Robert R. Rankin,* of Portland, for Charles Amos Cogswell, appellant.

*M. M. Matthiessen, of Portland* (Wood, Matthiessen & Wood, of Portland, on the brief), for United States National Bank of Portland and M. M. Matthiessen, executor, appellants.

*James L. Conley,* of Portland (with Brown & Hnueke, of Spokane, Washington, on the brief), for respondent.

KELLY, J.

Constance Moore Cogswell, plaintiff and respondent, and Charles Amos Cogswell, defendant and appellant, were married on August 12, 1916, at Spokane, Washington. They separated about May 12, 1924, and on May 17, 1924, Constance Moore Cogswell filed suit, in the Superior Court of California for the County of Alameda, for divorce on the ground of mental cruelty. Charles Amos Cogswell appeared by answer stipulated to be a specific and general denial.

A hearing was had and on June 5, 1924, Judge T. W. Harris of the California court signed an interlocutory decree (Plffs. Ex. 1; Defts. Ex. B) as follows:

"Wherefore, it is hereby ordered, adjudged and decreed, by this Interlocutory Judgment and Decree that a divorce ought to be granted to said plaintiff from said defendant, and that said plaintiff is entitled to a divorce from said defendant on the ground of defendant's extreme cruelty toward this plaintiff.

In accordance with the stipulation of the parties hereto made this day in open Court,

It is further ordered, adjudged and decreed, that until such time as the above named plaintiff shall marry, above named defendant shall pay plaintiff as and for alimony fifty dollars per month;

And it is further ordered, adjudged and decreed, that until the further order of the court the defendant shall pay to plaintiff the sum of twenty-five dollars per month for the support, maintenance and education of said minor child, Helen Charlotte Cogswell;

And it is further ordered, adjudged and decreed, that said plaintiff is awarded the care, custody and control of said Helen Charlotte Cogswell said minor child hereinabove named.

And it is further ordered, adjudged and decreed that defendant pay to plaintiff the sum of one hundred dollars for and as attorney fees in full in the above entitled matter, and the actual costs expended by plaintiff in this action.''

On June 10, 1925, upon motion of defendant Cogswell a decree of divorce was rendered by said Superior Court of California for the County of Alameda, which, omitting the title, is as follows:

''Final Judgment of Divorce.

The motion of the Defendant in the above entitled action, for final judgment therein, has come on regularly for hearing this day, and it appears to the Court that an interlocutory judgment of divorce in favor of the above named Plaintiff and against the above named Defendant was entered in the said cause on the 5th day of June, 1924, in Judgment Book 152 of the said Court, at page 1, and that no appeal has been taken from the said interlocutory judgment nor motion for a new trial made.

Therefore, it is hereby ordered, adjudged and decreed that the said Constance Moore Cogswell be and is hereby granted a divorce from the said Charles A. Cogswell on the ground of (defendant's) extreme cruelty and that the marriage between the said plaintiff and the said defendant be and the same is hereby dissolved and each of the said parties is restored to the status of a single person.

Done in open Court this 10th day of June 1925.

(Signed) Joseph S. Koford
Judge of the Superior Court of the State of California in and for the County of Alameda.''

Defendant Cogswell made payments provided for in said interlocutory judgment up to December 12, 1924, and has made no payment since that time. Plaintiff has not remarried since said interlocutory judgment

was rendered; and, by this suit, she seeks to establish a judgment in the state of Oregon in accordance with the terms and provisions of the foregoing interlocutory judgment of the California court with respect to payments of money by defendant to plaintiff.

Helen Charlotte Cogswell, the daughter of plaintiff and defendant Cogswell referred to in said above quoted interlocutory judgment, was born on February 27, 1920, and attained her majority on February 27, 1941, not having theretofore married.

Defendant, Charles Amos Cogswell, is the son of Mrs. Martha Cogswell, who died on April 26, 1942, being a resident and inhabitant at the time of her death of and within Multnomah County, Oregon.

On November 3, 1939, Mrs. Martha Cogswell executed a deed conveying to defendant The United States National Bank of Portland, Oregon, title to the following described real property situate in the city of Portland, Multnomah County, Oregon, to-wit:

Parcel 1: All of Lots seven (7) and eight (8) in Block Eighty-two (82) in Holladay's Addition to East Portland, now in the city of Portland;

Parcel 2: All of Lots seven (7) and eight (8) in Block Eighty (80) in Stephens Addition to East Portland, now in the city of Portland;

Parcel 3: The West one-half (½) of Lots seven (7) and (8) in Block two hundred and fifty-nine (259) in the city of Portland.

The foregoing property was conveyed to defendant bank in trust as shown by a written agreement executed by Mrs. Martha Cogswell and said defendant bank contemporaneously with the execution of said deed, by the terms of which agreement the defendant bank agreed to hold, manage and dispose of the same as a

trust fund, for the benefit, first, of said Martha Cogswell for the term of her life, and, upon her death, if not meanwhile modified or revoked by her, to proceed with the orderly liquidation and conversion into cash of the properties then comprising the trust fund, and as soon as sufficient funds were available from such liquidation, to set aside three separate funds of $2,000.00 for each of her following named grandchildren, namely, Helen Charlotte Cogswell, Thomas Cogswell Donaca and Marjorie Ann Donaca Haberman; and meanwhile and until the properties had all been fully liquidated and converted into cash, to pay one-third of the net income of said trust fund at periodic intervals to each of said Martha Cogswell's three children, to-wit: Marie C. Gilinsky, Marjorie Cogswell Donaca and defendant Charles A. Cogswell; and if and when said property has been completely liquidated and the trust fund is entirely in cash and marketable investments or securities, then to distribute the entire trust fund, share and share alike, to said three children of Martha Cogswell, provided, that in the event of death of the defendant, Charles A. Cogswell prior to such distribution, then his wife, Lois Cogswell, should succeed to all the interest in or to the trust property to which her husband would have been entitled if living. Until said separate funds of $2,000.00 each shall have been set up by said defendant bank out of the funds realized through the sale of the properties, 3/60ths of the net income from the trust properties should be paid and distributed to each of said above named grandchildren of Martha Cogswell and 17/60ths thereof should be paid and distributed to each of her above named children to-wit: Marie Cogswell Gelinsky, Marjorie Cogswell Donaca and Charles A. Cogswell.

Said agreement contains the following provision:

"Spendthrift Clause. Each beneficiary hereunder, other than the Trustor, is hereby restrained from alienating, anticipating, encumbering, or in any other manner assigning his or her interest or estate in either principal or income, and is without power so to do, nor shall such interest or estate be subject to his or her liabilities or obligations, nor to judgment or other legal process, bankruptcy proceedings, or claims of creditors or others."

No sale or contract for sale of the real property conveyed by Martha Cogswell to defendant bank as above stated has been made by said bank except that it did on the 11th day of August, 1942, enter into an executory contract for the sale of Lots 7 and 8 in Block 82, Holladay's Addition to East Portland, now in the city of Portland, for the price of $5,500.00 payable as follows: $1,000.00 upon the execution of the contract, which amount was paid, and the balance in consecutive monthly installments of not less than $50.00 cash commencing on October 1, 1942, including interest payable monthly on unpaid balance at the rate of five per cent per annum.

Defendant Matthiessen interposes an answer admitting that he is the executor of the estate of Martha Cogswell, deceased, denying on information and belief the material averments of plaintiff's complaint, and admitting that Mrs. Martha Cogswell, mother of the defendant, Charles A. Cogswell, left an estate consisting entirely of personal property, mainly cash and United States Government Bonds, appraised in the estate proceedings at $41,270.62, and that by the last will and testament of said Martha Cogswell heretofore admitted to probate by order of the circuit court of the state of Oregon for Multnomah County, department

of probate, said testatrix bequeathed one-third of her net estate to her son, the defendant, Charles A. Cogswell; and also admitting that the title and control of personal property in the estate of Martha Cogswell, deceased, is now in this defendant, as her executor.

At the outset, we are confronted with the question whether, as alleged by defendant Cogswell, plaintiff executed a release and discharge of her former husband, Charles A. Cogswell, from the obligation imposed upon him by the interlocutory judgment in suit which was rendered by the Superior Court of California in and for Alameda County, awarding plaintiff $50.00 per month as alimony and $25.00 per month for the support and maintenance of their minor child.

■ From a consideration of the record, we find that defendant Charles A. Cogswell has failed to prove by a preponderance of the testimony that plaintiff executed a release of the obligations imposed upon him by the interlocutory judgment in suit. No good purpose could be gained by an extended elaboration of the testimony on that issue. Suffice it to say that while defendant Cogswell asserts that such a release in writing was executed by plaintiff, plaintiff denies it. The purported written release was not produced, defendant Cogswell claiming that he delivered it to Judge Koford when the judgment of divorce was signed by that judge and that diligent search therefor was made but it could not be found. Defendant Cogswell was then practicing law and the course he says he took in that regard is, to say the least, a very unusual one for a lawyer to take. In the orderly course an attorney would secure an order of the court and based upon such a writing would cause such order to be entered of record.

Judge Koford died on the 28th day of January,

1930, and hence cannot speak for himself. The writer is of the opinion that if he were living he would indignantly deny that in the absence of plaintiff he not only signed a decree at the instance of defendant Cogswell, which, in his opinion, terminated the award of alimony to plaintiff expressly provided by the terms of the interlocutory decree, but he also consumed approximately three-quarters of an hour in a private conversation in his chambers with defendant Cogswell instructing and advising said defendant that his the said Judge Koford's action in thus signing the divorce decree had the devastating effect mentioned upon the interests of plaintiff; and he also reviewed the California cases holding that such was the law.

■ Defendant Cogswell also interposes the defense that the entry of the judgment of divorce on June 10, 1925, in which judgment no mention is made of the award to plaintiff of alimony, maintenance and support which was incorporated in the terms and provisions of the interlocutory decree in suit, rendered ineffective and unenforcible said award of alimony, maintenance and support.

■ We cannot concur in that argument. On the contrary, the California courts hold that such interlocutory decree is a final determination of all matters not suspended until the entry of the final decree. *Overell v. Superior Court of Los Angeles County,* 29 Cal. App. (2d) 418, 84 P. (2d) 789; *Borg v. Borg,* 25 Cal. App. (2d) 25, 76 P. (2d) 218.

Defendant Cogswell also argues that the trial court should have decreed that the interlocutory judgment in suit was a temporary order and therefore not enforcible by the Oregon courts, not protected by the full faith and credit clause of the United States Con-

stitution and not within the class of judicial acts commanding recognition in jurisdictions of sister states under the doctrine of comity between states.

*Leupe v. Leupe,* 21 Cal. (2d) 145, 130 P. (2d) 697, cited in support of this argument by defendants Cogswell upheld an order modifying an interlocutory decree by providing that future monthly payment to the wife should be made in the sum of $35.00 per month instead of $75.00 as provided in the interlocutory decree. There is no suggestion that the matured unpaid installments could be reduced.

Other California cases hold that an award for alimony may be modified as to installments to become due in the future, but as to accrued installments it is final.

*Zaragoza v. Zaragoza,* 48 Cal. App. (2d) 27, 119 P. (2d) 162; *Dreesen v. Dreesen,* 31 Cal. App. (2d) 479, 88 P. (2d) 223, citing *Keck v. Keck,* 219 Cal. 316, 26 P. (2d) 300.

Section 137, California Civil Code, permitting an allowance to the wife pendente lite, is also cited to the point under discussion.

As we understand the decisions of the California courts, they clearly indicate that the provision of said section 137 in no wise affects the finality of the allowance to plaintiff as far as unpaid matured installments thereof are concerned.

The following four cases are cited to the point that because the allowance of $50.00 per month to plaintiff is termed alimony, it was restricted in its effect to the time when the marital relations existed between plaintiff and Charles A. Cogswell, or during the pendency of the action which terminated when the decree of divorce entered. *Ex parte Spencer,* 83 Cal. 460, 23 P. 395, 17 Am. St. Rep. 266; *Simpson v. Simpson,*

21 Cal. App. 150, 131 P. 99; *Honey v. Honey,* 60 Cal. App. 759, 214 P. 250; *Scheibe v. Scheibe,* 57 Cal. App. (2d) 336, 134 P. (2d) 835.

*Ex parte Spencer,* supra, is a case seeking release of the former husband of Josephine M. Spencer from imprisonment upon a conviction for contempt in refusing to obey an order of the court requiring him "to pay the sum of twenty-five dollars per month as alimony" to her. The decree of divorce required plaintiff to pay defendant "as permanent alimony the sum of $50 per month on the 1st day of September, 1884, and on the first day of each and every month thereafter."

We quote from the prevailing opinion:

"The only remaining inquiry is, whether the judgment or order which the petitioner is found guilty of having disobeyed was a lawful judgment or order.

Upon this point it is insisted that in divorce proceedings, when the court reaches its final judgment, and grants a decree of divorce under our statutes, dissolving the bonds of matrimony, it has no jurisdiction or power to decree the payment of 'permanent', or indeed any future, 'alimony'; that the only provision on the subject of 'alimony' is that found in section 137 of the Civil Code, and relates entirely to what may be done *pendente lite;* that alimony grows out of that obligation of support which arises from the relation of husband and wife, and proceeds only from husband to wife; that the moment the decree of divorce is granted the relation of husband and wife has ceased; there is then no husband, no wife, and hence there can be no alimony.

It is true that 'alimony,' in its strict technical sense, proceeds only from husband to wife, and that where the relation of husband and wife does not exist, strictly speaking there can be no alimony.

It is true, also, that the legislature has used the term only in its strict legal sense, and has therefore used the word 'alimony' only when prescribing the provisions which the court might make for the support of the wife *pendente lite*. But the courts have not always been as careful in their use of the word. They have frequently used it as a mere name for another and different allowance, made and authorized to be made under section 139 of the Civil Code. It was manifestly so used in this case, and has been so used in many others. By that section it is provided: 'Where a divorce is granted *for an offense of the husband,* the court may compel him to  *  *  *  *  make such suitable allowance to the wife for her support during her life, or for a shorter period, as the court may deem just, having regard to the circumstances of the parties respectively; and the court may, from time to time, modify its orders in these respects.'

That is exactly what the court did in this case, falling, however, into the quite common error of calling the allowance 'permanent alimony'. If such an allowance is lawfully made, the simple misnomer of it, would not justify a court, even upon appeal, much less under this writ, in setting it aside.  *  *  *  Under the Code, which must 'be liberally construed with a view to effect its object, and to promote justice' (sec. 4), the court will look at the substance of the thing and not defeat its object merely because somebody has misnamed it.'' Ex Parte Spencer, supra.

*Simpson v. Simpson,* 21 Cal. App. 150, 131 P. 99, is a case where the records were destroyed and the opinion is therefore of little if any value as a precedent.

*Honey v. Honey,* 60 Cal. App. 759, 214 P. 250, as far as pertinent to the question here, holds that an allowance which is authorized on the granting of a divorce to a wife is something different from alimony proper.

*Scheibe v. Scheibe,* 57 Cal. App. (2d) 336, 134 P. (2d) 835, holds that, properly speaking, the award made under section 139 Civil Code of California is not alimony, nor is it merely a substitute for the wife's interest in the community or separate property of the husband. It is also held in Scheibe v. Scheibe, that "the power to grant such an award is incidental to the determination of a divorce action, the same as is the right of a trial court to award the custody of children."

Neither the Simpson, Honey nor Scheibe case disapproves, criticizes or seeks to alter the holding in the Spencer case that the court will look at the substance of such award and not defeat its object merely because somebody has misnamed it. As the writer understands this holding in the Spencer case it is to the effect that the proper name for it is maintenance, but, like the sweetness of a rose by any other name, such an award by any other name will be just as effective. Moreover, Professor Ballentine, a member of the faculty of the University of California, defines the term "alimony" as follows:

"Literally, the word signifies nourishment or sustenance, and is the allowance which a husband may be compelled to pay to his wife for her maintenance when she is living apart from him, or has been divorced. Like the 'alimentum' of the civil law, from which the word was evidently derived, it has for its sole object the provision of food, clothing, habitation, and other necessaries for the support of the wife. Hence, every provision in a judgment of divorce or separation, made solely for this purpose, is to be regarded as alimony whether expressly designated as such or not, and irrespective of whether it requires payment of money at intervals or in a gross sum. 1 R. C. L. 864.

That allowance which is made to a woman on

a decree of divorce for her support out of the estate of her husband. At common law it was usually settled at the discretion of the ecclesiastical judge on consideration of all the circumstances of the case. 30 A. L. R. 83, note."

■ We are unwilling to ascribe a more restricted meaning to the term "alimony" than that which this court speaking through Mr. Justice, then Chief Justice, Bailey, approved as follows:

"In a strict legal sense, 'alimony' means an allowance which the husband is required to pay to the wife for her maintenance pending or following her divorce or legal separation from him. In a broader sense, however, it covers an award made for the support of minor children." (Citing authorities.) *State v. Casey,* 175 Or. 328 153 P. (2d) 700, 703.

*Strupelle v. Strupelle,* 59 Cal. App. 526, 211 P. 248, holds that the interlocutory decree cannot make final disposition of community property or the homestead. Such disposition may be made only when the marriage is dissolved and a decree of divorce is entered. The appellate court struck from the interlocutory decree that portion of it which purported to assign to the wife a life estate in Lot 19 in Block 286 of the city of Santa Barbara, California, and an undivided one-half interest as a tenant in common, in and to lot 20 in said block; and inserted in lieu thereof a clause to the effect that plaintiff was entitled to have such assignment made. The opinion refers to the stricken part as everything in the interlocutory decree "after the paragraph which adjudges that plaintiff shall have and recover a monthly allowance of $75."

*Pereira v. Pereira,* 156 Cal. 1, 103 P. 488, 23 L. R. A. (N. S.) 880, 134 Am. St. Rep. 107, holds that it is proper for the trial court to determine all the issues in one

trial, to render an interlocutory judgment declaring the rights of the parties upon all the issues and to declare that the same should in all respects become final only at the time when the decree of divorce became final.

It was argued by appellant in *Pereira v. Pereira,* supra, that the court's power to make a disposition of the property rights of the parties exists only at the time when the divorce judgment becomes final, and that any act attempted to be accomplished before that, in the way of a trial or interlocutory judgment declaring the property right or the rights to the custody of children, is *coram non judice* and void.

We quote from the opinion as follows:

"We do not think that the code provision requires such a narrow construction. When the history of legislation on the subject and the conditions existing at the time of the adoption of the amendment of 1903 are considered, the purpose, meaning and effect of that amendment are not difficult to discover. While the law deems it necessary to provide that a divorce may be granted when conditions are such as to make the marriage relation intolerable, it is nevertheless true that the policy of the law does not favor the dissolution of marriages. It has been generally believed that many divorces were sought, not in good faith, but because a roving fancy had found another affinity more attractive, and that a dissolution was often desired solely for the purpose of forming a new marital connection. With the design of providing conditions under which it would be understood that ardent passions of this character must perforce have time to cool before a new marriage relation could be actually formed, the legislature, in 1897, enacted a law in effect providing that no marriage should be entered into by any divorced person, until at least one year had elapsed after the decree of divorce was rendered. (Stats. 1897, p. 34) It has become customary to avoid the provisions of this act by

the expedient of going to an adjacent state for the purpose of entering into a new marital relation. The court was compelled to hold that marriages contracted in another state were valid in this state, although they were entered into within less than a year after a divorce had been granted in this state to one of the parties. (Estate of Wood, 137 Cal. 129 [69 Pac. 900].) The purpose of the amendment of 1903 was to carry into effect the object attempted to be attained by the statute of 1897. To do this the expedient was adopted of delaying the final judgment in divorce cases for the period of one year after it was judicially ascertained that a divorce should be granted. By thus making the right to a divorce ineffective for the period of one year, it became impossible for the parties to contract a valid new marriage anywhere until at least a year after the trial of the action of divorce had taken place. Except so far as was necessary to accomplish this object, it was not the intent of the statute to change in any respect the practice and procedure in actions for divorce. We do not doubt that the court has the same power now that it has always had to try and determine the issues between the parties in a divorce action with respect to property and custody of children, and that this may, and generally should be done at the same time as the issues with respect to the case for divorce are tried and determined. Unquestionably the court would have power under present law, as it always has had the power under previous laws, to postpone the trial and decision of the property rights and custody of the children to any reasonable time after the rendition of the judgment of divorce, whether interlocutory or final. It is proper in all actions for divorce to try the entire action at the same time as the issues respecting divorce are tried and to give an interlocutory judgment declaring the rights of the parties with respect to property and children.'' *Pereira v. Pereira*, supra.

*In re Boeson's Estate,* 201 Cal. 36, 255 P. 800, was

a proceeding by a widow against the state of California for an assignment to her of the estate of her deceased husband, in which Fin Lun, Consul of Denmark, intervened. The widow's petition for such assignment was denied by the trial court, and the order of denial thereof was affirmed on appeal. The ground upon which the court based its action was that a property settlement had been made by the petitioner, wife and her husband, by the terms of which the petitioner had deprived herself of the right to receive any portion of her husband's estate; and that she failed to show a revocation of such property settlement. The settlement was made when a divorce suit was pending and an interlocutory decree entered. No decree of divorce was entered.

*Dupont v. Dupont*, 4 Cal. (2d) 227, 48 P. (2d) 677, quoting from *DeHaven v. Superior Court of Los Angeles County*, 114 Cal. App. 253, 255, 300 P. 95, holds:

> "It is well-established law that, when an interlocutory decree has become final, in the sense that it is no longer subject to the right of appeal or motion for a new trial, or any right to relief by order within the provisions of section 473, Code of Civil Procedure, the trial court is without jurisdiction to vacate such decree or modify the same. There is, of course, the continuing authority of the court to modify its orders relating to payment of alimony; but with respect to the right to a divorce and with respect to the determination of property rights, the right to modify or vacate the decree no longer exists."

*McClure v. McClure*, 4 Cal. (2d) 356, 49 P. (2d) 584, 100 A. L. R. 1257, contains this expression:

> "It is well settled that a decree of divorce may be rendered which permanently relieves the hus-

band from the obligation to pay alimony in any sum. The decree has this effect when it expressly so provides, or where it neither awards alimony to the wife nor reserves the right thereafter to make an allowance for her support. Howell v. Howell, 104 Cal. 45, 37 P. 770, 43 Am. St. Rep. 70; London G. & A. Co. v. Industrial Accident Commission, 181 Cal. 460, 184 P. 864; Soule v. Soule, 4 Cal. App. 97, 87 P. 205; Bacigalupi v. Bacigalupi, 72 Cal. App. 654, 238 P. 93; Molema v. Molema, 103 Cal. App. 79, 283 P. 956; Gillespie v. Andrews, 78 Cal. App. 595, 248 P. 715, note 83 A. L. R. 1248, citing cases; 71 A. L. R. 723; * * *.''

In *McClure v. McClure,* supra, the question decided was that the court had the authority to relieve the former husband permanently of the obligation to pay alimony by ordering modifications to be made under the provisions of section 139. The case did not require any expression as to the effect of the absence from the decree of any award or reservation of the right thereafter to make one. What was there said in that respect was dictum. Of the cases cited as supporting it, those wherein interlocutory decrees were rendered, made no award of alimony either in the interlocutory decree or the decree of divorce.

*Gosnell v. Webb,* 60 Cal. App. (2d) 1, 139 P. (2d) 985, holds that a provision in an interlocutory decree directing defendant to pay $200 per month to plaintiff as alimony commencing June 10, 1940, and continuing thereafter until the death or remarriage of the plaintiff, was a provision for alimony and was not a term of property settlement and was one within the jurisdiction of the court to modify. There is no suggestion that unpaid matured installments could be cancelled or reduced.

The following three California cases are cited by defendant Cogswell to the point that neither future

nor past due installments under such interlocutory decrees are final, to-wit: *Merritt v. Merritt,* 220 Cal. 85, 29 P. (2d) 190; *Ross v. Ross,* 1 Cal. (2d) 368, 35 P. (2d) 316, and *Triest v. Triest,* 67 Cal. App. (2d) 320, 154 P. (2d) 2. Neither of these three cases holds that accrued and unpaid installments awarded for support and maintenance of the wife or alimony may be subsequently reduced or modified. The doctrine of these cases is that mere default in paying such installments does not necessarily prevent a modification of future installments.

In *Ross v. Ross,* supra, while no modification or cancellation of accrued and unpaid installments was approved, a nunc pro tunc order as of May 15, 1933 vacating the order for payment of alimony commencing on that date, was modified on appeal by substituting the following: "the order for the payment to cease commencing May 15, 1933, until further order of the court."

To the point that in the decree of divorce should be contained the ultimate determination of all the issues between the parties, defendant Cogswell cites Civil Code of California, Sec. 132 (1923) Deering; *Pereira v. Pereira,* supra, and *Estate of Boeson,* supra. Said section 132 (1923) Deering, is as follows:

"When one year has expired after the entry of such interlocutory judgment, the court on motion of either party, or upon its own motion, may enter the final judgment granting the divorce, and such final judgment shall restore them to the status of single persons, and permit either to marry after the entry thereof; and such other and further relief as may be necessary to complete disposition of the action, but if any appeal is taken from the interlocutory judgment or motion for a new trial made, final judgment shall not be entered until such motion or appeal has been finally disposed

of, nor then, if the motion has been granted or judgment reversed. The death of either party after the entry of the interlocutory judgment does not impair the power of the court to enter final judgment as hereinbefore provided; but such entry shall not validate any marriage contracted by either party before the entry of such final judgment, nor constitute any defense of any criminal prosecution made against either.''

It will be noted that there is no express requirement in section 132, above quoted, that the decree of divorce shall repeat the awards of the interlocutory decree for maintenance and support of the wife. Neither is there any holding to that effect in *Pereira v. Pereira,* supra, or *Estate of Boeson,* supra.

To the point that such temporary interlocutory decrees are not enforcible under the full faith and credit clause of the United States Constitution, defendant Cogswell cites *Lynde v. Lynde,* 181 U. S. 183, 45 L. Ed. 810, 21 S. Ct. 555; and *Sistare v. Sistare,* 218 U. S. 1, 54 L. Ed. 905, 30 S. Ct. 682, 28 L. R. A. (N. S.) 1068, 20 Ann. Cas. 1061. Neither of these cases deals with an interlocutory decree *Lynde v. Lynde,* supra, is an action brought in the state of New York based upon a decree of a court of chancery of New Jersey made subsequently to entry of a decree of divorce and an amendment thereto ordering that the petitioner have the right to apply at any time thereafter for reasonable alimony. Pursuant to such amendment petitioner applied for alimony and the decree of the New Jersey court awarding such alimony was the basis for the action brought in New York.

*Sistare v. Sistare,* supra, was an action instituted in the Superior Court of New London County, Connecticut, to recover the amount then in arrears of the

alimony awarded by the Supreme Court of the State of New York upon granting plaintiff a separation from bed and board from her husband. The question when and to what extent a decree awarding alimony is within the protection of the full faith and credit clause of the constitution of the United States is discussed at length in the opinion of Mr. Justice White and the cases of *Barber v. Barber,* 21 How. 582, 16 L. Ed. 226, and *Lynde v. Lynde,* supra, were reconciled. Defendant in error in the Sistare case urges that it was established in the Lynde case that past due installments of a judgment for future alimony rendered in one state are not within the protection of the full faith and credit clause. In reconciling the Lynde case with the Barber case, the Supreme Court of the United States held in the Sistare case, that, unless in the jurisdiction wherein a decree is entered awarding alimony payable in future installments, it is prescribed law that past due installments are subject to modification or cancellation by the court of that jurisdiction, the judgment rendered in such jurisdiction is as to such unpaid past due installments within the protection of the full faith and credit clause of the United States Constitution.

On December 4, 1944, an opinion was rendered by the United States Supreme Court reaffirming the doctrine of the cases of *Barber v. Barber,* supra, and *Sistare v. Sistare,* supra. *Barber v. Barber,* 323 U. S. 77, 65 S. Ct. 137, 89 L. Ed. 82, 157 A. L. R. 163. On February 25, 1946, this doctrine was reaffirmed. *Griffin v. Griffin,* 327 U. S. 220, 66 S. Ct. 556, 90 L. Ed.

To the point that temporary interlocutory decrees are not enforcible under the principals of comity between states, defendant Cogswell cites *McDonald v. Butler,* 68 Cal. App. (2d) 120, 156 P. (2d) 273, which

is a case instituted in the Superior Court of Los Angeles County, California, based upon a decree of the Circuit Court of St. Clair County, Michigan, in a divorce action wherein the sum of $6,680 had accrued under the order of the Michigan court.

In affirming a judgment of dismissal, the California Court of Appeals, speaking through Mr. Justice Wood, says:

"In the Michigan statute it is provided: 'After a decree for alimony or other allowance, for the wife and children, or either of them * * * the court may, from time to time, on the petition of either of the parties, revise and alter such decree, respecting the amount of such alimony or allowance and the payment thereof, * * * and may make any decree respecting any of the said matters which such court might have made in the original suit.' Michigan Compiled Laws, 1929, § 12748, 18 Mich. Stat. Ann. Chap. 245, § 25,106.

In interpreting this statutory provision, the Michigan courts have held that the trial court reserves jurisdiction to modify an award for support money *and that the right of modification extends to accrued payments.* (Italics supplied.)

Nixon v. Wright, 146 Mich. 231, 109 N. W. 274, 10 Ann. Cas. 574; Loomis v. Loomis, 273 Mich. 7, 262 N. W. 331; Toth v. Toth, 242 Mich. 23, 217 N. W. 913, 56 A. L. R. 839; Wellman v. Wellman, 305 Mich. 365, 9 N. W. 2d 579. In Biewend v. Biewend, 17 Cal. 2d 108, 109P. 2d 701, 132 A. L. R. 1264, our Supreme Court followed the rule of Sistare v. Sistare, 218 U. S. 1, 20 S. Ct. 682; 54 L. Ed. 905, 28 L. R. A. N. S. 1068, 20 Ann. Cas. 1061, and, while holding that a divorce decree providing for support money rendered in the state of Missouri was a final judgment that could be enforced in California, expressly stated that 'only if such accrued payments are still subject to modification may recovery be denied.' "

■ From a consideration of the authorities, we conclude that because the unpaid matured installments of the award to plaintiff by the California court, upon which this suit is based cannot be rescinded or modified, it is such a judgment as is protected by the full faith and credit clause of the United States Constitution. (Art. IV, Sec. 1, United States Constitution, Vol. 9, O. C. L. A. p. 20.)

Defendants interpose pleas to the effect that in accordance with the provisions of section 335 and subdivision 1 of section 336 of the Code of Civil Procedure of the State of California, and also by virtue of the statutes of limitation of Oregon, any cause of action on said interlocutory judgment and decree and said final decree of divorce had become completely barred when the instant case was instituted.

Taking the view that each monthly installment of the award to plaintiff became an independent judgment at its maturity, which view is reflected by the statutes and decisions of both California and Oregon, we hold that those installments which matured prior to the time limited by law upon which a suit or action could be instituted upon a judgment were barred and this brings us to a consideration of the question whether the statute of limitation of Oregon or that of California should control in the instant case. The California statute provides that the period for the commencement of an action upon a judgment or decree is five years. The Oregon statute prescribes a period of ten years therefor.

Oregon, however, also has a statute as follows:

"When the cause of action has arisen in another state, territory, or country, between non-residents of this state, and by the laws of the state, territory or country where the cause of action arose,

an action can not be maintained thereon by reason of the lapse of time, no action shall be maintained thereon in this state." Vol. 1, O. C. L. A., 43, section 1-224, being the last section of Chapter 2 of Title 1 thereof.

Among the general provisions of the Oregon statute governing suits in equity, the following provision is made:

"A suit shall only be commenced within the time limited to commence an action as provided in chapter 2 of title 1 of this code." Section 9-103, Vol. 2, O. C. L. A. 19.

■ Controlled, as we must be, by the two provisions of the Oregon statute, last above quoted, we hold that the case at bar is governed by the California statute of limitations.

■ Each installment of the award granted by the California court as it matured being treated as a judgment, it follows that those installments which matured more than five years prior to the institution of the instant suit are barred by the California statute of limitations. Section 336, California Code of Civil Procedure (Deering, 1923). This suit was instituted October 23, 1942.

By section 336, California Code of Civil Procedure, the period prescribed for the commencement of an action upon a judgment or decree of any court of the United States is five years. This provision has been held to apply to actions upon judgments of the courts of California. 16 Cal. Juris, p. 431, § 40; *Nordstrom v. Corona City Water Co.*, 155 Cal. 206, 100 P. 242, 132 Am. St. Rep. 81; *Rowe v. Blake, et al.*, 99 Cal. 167, 33 P. 864, 27 Am. St. Rep. 45; *Mason v. Cronise*, 20 Cal. 211.

In *DeUprey v. DeUprey,* 23 Cal. 352, it is held that when a judgment is rendered payable in installments, the time within which under the statute of limitations an action on such judgment may be brought, begins to run from the period fixed for the payment of each installment as it becomes due. In the DeUprey case the Supreme Court of California, speaking through Mr. Justice Crocker, say:

> "The right to bring action upon a judgment or decree, is clear and undoubted; and the fact that the decree was for a divorce and for alimony, makes no difference in the rule."

The holding in *DeUprey v. DeUprey,* supra, with reference to the time when the statute of limitations begins to run upon a judgment for alimony payable in installments is approved by *Yager v. Yager, et ux,* 7 Cal. (2d) 213, 218, 60 P. (2d) 422, 106 A. L. R. 664.

■ When the interlocutory decree in suite was entered, the law, both in California and in Oregon, provided that a female attained her majority at the age of eighteen years. Subsequently, in both states the law was amended by fixing the age of majority at twenty-one years. In the light of these amendments, it is obvious that the daughter of plaintiff and her former husband, defendant Cogswell, attained her majority on the 27th day of February, 1941. *State ex rel Weingart v. Kiessenbeck,* 167 Or. 25, 114 P. (2d) 147.

■ The allowance, therefore, made by the interlocutory decree of the California court for support and maintenance of said minor child terminated upon February 27, 1941, so that from the time of the maturity of the November, 1937, installment to the termination of the award for the support of the minor child, three years and three months elapsed during which plaintiff was entitled to $75.00 per month. This not having been

paid as it matured, interest must be allowed thereon. The thirty-nine installments aggregate $2,925.00. Computing it at the rate of 7% per annum, the interest thereon for said thirty-nine months aggregates $354.23. 1919 Statutes and Amendments to the (California) Codes, p. LXXXIII, Art. XX, Sec. 22, Constitution of California. From February 27, 1941, to March 2, 1945, the date of the decree herein four years and three days elapsed. Interest upon $2,925.00 at 7% per annum for the last named period amounts to $819.20. From the date of the daughter's majority to the date of the decrees, forty-eight months elapsed during which plaintiff was entitled to $50.00 per month aggregating $2,400. The interest at the rate of 7% upon these forty-eight installments of $50.00 each during the four-year period amounts to $343.00.

■ In other words, plaintiff is entitled to a judgment herein against defendant Cogswell in the principal sum of $5,325.00, and interest in the sum of $1,516.43, aggregating a total of $6,841.43, with interest thereon at the rate of 7% per annum from March 2, 1945, until paid.

By the Oregon statute, it is required that the effect of a judicial record of a sister state is the same in Oregon as in the state where it was made, except that it can only be enforced here by an action, suit or proceeding, and except also that the authority of a guardian or committee, or of an executor or administrator does not extend beyond the jurisdiction of the government under which he was invested with his authority. Section 2-723, Vol. 1, O. C. L. A. 308.

■ The terms, therefore, of the interlocutory decree in suit providing an allowance to plaintiff in the sum of $50.00 per month until she shall marry again are

effective in this jurisdiction; and the decree of the trial court properly so declared.

Defendant Cogswell cites *Rowe v. Rowe,* 76 Or. 491, 149 P. 533; and terms it "the Oregon case that determines the disposition to be made of this appeal." We think that the doctrine of *Cousineau v. Cousineau,* 155 Or. 184, 63 P. (2d) 897, 109 A. L. R. 643, should be followed.

In the Cousineau case, speaking through Mr. Justice ROSSMAN, this court said:

"The defendant's duty was not diminished in any manner when he chose to come to our state, and, since both Washington and California are prepared to enforce the decrees of this state in exactly the same manner as we would do ourselves, we ought not to make our state a safe haven for those who seek to evade duties imposed upon them by the decrees of our neighboring states unless there is no escape from such an unhappy task. Fortunately our neighbors, as well as Mississippi, have shown the way. We do not enforce the California decree, as such, in this state, but regard it as the basis for an Oregon decree having the same effect in this state as the California decree has in that state."

It is true that in the instant case defendant Cogswell has not become a resident or citizen of Oregon, but by pleading to plaintiff's complaint he subjected himself to the jurisdiction of the Oregon court and hence to the terms of its judgment and decree.

This brings us to a consideration of the effect of the so-called spendthrift trust provision in the trust agreement in suit. It is urged by defendants Cogswell and The United States Bank that this provision renders the trust funds now in the custody of defendant bank invulnerable to plaintiff's claim herein.

In determining whether a lien in favor of plaintiff may be impressed upon the interest of defendant Cogswell in the trust fund in suit, we are confronted with a conflict of authorities.

To review these authorities would unduly extend this opinion, and would serve no good purpose.

In an annotation to the case of *Bucknam v. Bucknam* in A. L. R. under the subject, "Income from trust as subject to claim for alimony or for maintenance of wife or children of beneficiary," we find under the subtitle, "Income from trust as subject to claim for alimony" the following editorial statement:

"While there is considerable difference of opinion on the question in different jurisdictions, in the majority of cases it has been held that the income from a trust fund was subject to a claim of the divorced wife of the beneficiary for alimony." 104 A. L. R. 780.

Following is the text of the Restatement of the Law, Trusts,—

"(2) A trust in which by the terms of the trust a valid restraint on the voluntary and involuntary transfer of the interest of the beneficiary is imposed is a spendthrift trust." Section 152, Vol. 1, Restatement of the Law, Trusts, p. 368.

As stated, the trust instrument in the instant case provides that defendant Cogswell is entitled to have his interest in the principal paid to him if he is living after a designated period; namely, when such trust fund has been completely liquidated and, in its entirety, is in cash, and in case of death of the defendant before such complete liquidation, his wife, Lois Cogswell, shall succeed to all the interest to which her husband would have been entitled if living. Said instrument also pro-

vides for the payment to said defendant of a specified portion of the income from said trust fund when such income accrues.

■ Regardless of whether the instrument of trust under consideration created a spendthrift trust as to the income therefrom, and imposed a valid restraint upon alienation thereof as against an ordinary claim, we hold that the restrictive clause in said instrument is not effective against plaintiff's claim for matured installments of the award as made by the California court for her support and maintenance and that of her minor daughter.

We quote from section 157 of the Restatement of the Law upon the subject of Trusts:

"§ 157. Particular Classes of Claimants.

Although a trust is a spendthrift trust or trust for support, the interest of the beneficiary can be reached in satisfaction of an enforceable claim against the beneficiary,

(a) by the wife or child of the beneficiary for support, or by the wife for alimony; * * * * .

Illustrations to Clause (a):

1. * * * * *

2. A bequeaths $100,000 to B upon a spendthrift trust for C. C's wife brings a proceeding against C for divorce. A divorce is granted with a decree awarding alimony for $1500 a year. C's wife can reach C's interest under the trust in satisfaction of her claim for alimony."

Defendants Cogswell and The United States National Bank cite *Mattison v. Mattison*, 53 Or. 254, 100 P. 4, 133 Am. St. Rep. 829, 18 Ann. Cas. 218 and *Stein v. United States National Bank*, 165 Or. 518, 108 P. (2d) 1016. The question whether a spendthrift trust is vulnerable to the claim of a former wife of the *cestui que trust* is not presented in either of these cases.

The plaintiff alleges:

"That, exclusive of the interest in his mother's estate and in said trust, defendant Charles Amos Cogswell is insolvent, and has manifested an intention never to pay any part of the aforesaid unsatisfied judgment of said Superior Court of the State of California to which he consented in open court: that plaintiff will suffer an irreparable loss and injury unless the power of this court is exercised to interpose and preserve in statu quo the interest of defendant Charles Amos Cogswell in the estate of Martha Cogswell, deceased, and in the property comprising the trust held by defendant The United States National Bank of Portland aforesaid."

Pursuant to this allegation and the showing made thereon the trial court made and entered a temporary injunction restraining said defendants bank and executor from disposing of said interests of said defendant Cogswell. Upon final disposition of the case, this injunction was continued and made permanent, but to the extent only as limited by the further provisions of the trial court's final decree. This final decree impressed a lien upon defendant Cogswell's interest in the funds of his mother's estate and those of the trust in suit in favor of plaintiff for the payment of the sum of $16,050, together with interest on the respective monthly payments from the date they respectively became due until the commencement of this suit in the sum of $8,664.37, or a total of $24,714.37.

■ We affirm the decree of the trial court in thus impressing a lien upon said funds in favor of plaintiff in so far as the installments of the award of said interlocutory decree have matured within the period of five years prior to the institution of the instant suit or since the institution thereof and prior to said final

decree of the trial court in the sum hereinbefore specified as having matured on March 2, 1945, namely, the sum of $6,841.43 with interest thereon at the rate of 7 per cent per annum from said March 2, 1945, with the qualification that the lien thus impressed in so far as it affects the trust funds, being administered by defendant, The United States National Bank, is limited to the income therefrom which defendant Cogswell otherwise would be entitled to receive. Since it reasonably appears that the funds inherited by defendant Cogswell from his mother's estate together with his accrued and unpaid portion of the income from the trust will suffice to liquidate the judgment in favor of plaintiff herein, we hold that said lien should not be and is not effective with respect to the corpus of said trust fund or the interest therefrom falling due to defendant Cogswell subsequent to the entry of the decree by the trial court upon said March 2, 1945. As to the interest of said defendant Cogswell in the funds of his mother's estate now in the hands of defendant Matthiessen, as executor, said lien herein impressed should be and is limited in the amount to the aggregate unpaid part of the judgment hereby ordered in the sum of $6,841.43 with interest as stated.

The final decree from which this appeal was taken is modified as herein stated and except as so modified is affirmed. Plaintiff is hereby awarded judgment against defendant Cogswell for her costs and disbursements herein.

Defendants, The United States National Bank, and Matthiessen, executor, are each awarded judgment against Cogswell for their respective costs and disbursements herein.