**In the Matter of Luella V. GARDNER, Bankrupt.**

**No. B-64-1472.**

United States District Court
D. Oregon.

June 30, 1965.

Julia Boston, Portland, Or., for trustee in bankruptcy.

Robert L. Olson, Portland, Or., for petitioner.

EAST, District Judge.

The bankrupt has petitioned for review of a referee's order. Bankrupt is a divorcee whose first husband became delinquent in making monthly payments ordered in the 1953 divorce decree for the care, maintenance, education and support of their only child. Six months before bankruptcy, the mother retained an attorney to enforce payment of delinquent installments. Garnishment of the father's wages produced some money and the father offered a lump sum in a compromise settlement of his overdue obligation. After bankruptcy intervened, the trustee recommended acceptance of the compromise offer. The bankrupt objected, contending the claim to the unpaid installments was not her property. The referee rejected this contention and authorized the trustee to accept the lesser sum in full settlement and compromise and to enter satisfaction of the unpaid installments. The referee treated the claim to the unpaid installments as bankrupt's property that passed to the trustee under § 70 of the Bankruptcy Act, 11 U.S.C. § 110 (1964 ed.), which provides in relevant part:

"The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located * * * (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered: *Provided,* That rights of action ex delicto for libel, slander, injuries to the person of the bankrupt or of a relative, whether or not resulting in death, seduction, and criminal conversation shall not vest in the trustee unless by the law of the State such rights of action are subject to attachment, execution, garnishment, sequestration, or other judicial process: * * *."

The correctness of the referee's position is the question on review here.

The controlling provisions of § 70, described by a leading authority as "simple and easily applied," Collier on Bankruptcy § 70.15(2) (1964), obviously require examination of Oregon law. Virtually nothing appears in Oregon statutes or cases dealing explicitly with the ownership of claims to unpaid child support payments, especially in terms of the transferability of those claims or their susceptibility to levy and sale, or other seizure, impounding or sequestration. However, in State ex rel. Casey v. Casey, 175 Or. 328, 153 P.2d 700, 172 A.L.R. 862 (1944), the Supreme Court of Oregon indicated that a custodial parent deals with child support payments as a fiduciary for the child. In Casey, a custodial mother secured a contempt proceeding against the father for failure to comply with an order directing payment of money for support of minor children. The father argued that the mother had no interest in enforcing that order since it made no mention of the clerk's turning over the required payments to her. The court noted the circuit court had power to ap-

point a trustee to handle the money decreed for the nurture and education of the minor children, but had not done so. "It is therefore apparent," the court concluded, "that the only proper and sensible construction to be given the order is that the money required of the defendant was to be paid to the clerk for the purpose of being turned over by that official to the custodian of the children, their mother." 175 Or. at 332, 153 P.2d at 701. This discussion by the court seems completely inconsistent with ownership of the matured but delinquent payments, in the bankruptcy sense, by the custodial parent.

In holding that the right to receive those delinquent payments indeed belonged to the bankrupt mother, the referee relied almost exclusively upon the terms of Ore.Rev.Stat. § 107.130(2) (1963)[1] and certain portions of the Casey decision. Examination of the indicated statute, however, and further consideration of Casey, reveals nothing that supports a holding of ownership of the delinquent payments in the mother. The cited statute simply places matured support payments beyond modification by an Oregon court, and, at least on the surface, in no way deals with ownership of the payments or of claims to them. And while Oregon's absence of legislative history-making machinery makes discussion of almost any statute's background somewhat speculative, the Casey decision discusses that background fairly confidently. Prior to 1921 amendments that placed matured support installments beyond court modification, a support decree could not be enforced by execution because "the decree was indefinite as to duration and amount to be paid, * * * It was merely a personal decree and could be enforced only by attachment of the person, by means of contempt proceedings; * * * "

175 Or. at 333, 153 P.2d at 702. With the 1921 amendments relating to finality, "all delinquent and unpaid installments were declared to be final judgments and were enforcible by levy and execution." Id. at 334, 153 P.2d at 702. Another possible basis for the 1921 amendments, also related to the concept of "final judgment," is the rule, established not long before the amendments, that matured support payments subject to retrospective modification by a court of the rendering state are not "final judgments" and are thus unprotected by the Full Faith and Credit Clause of the Federal Constitution. Sistare v. Sistare, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905 (1910); Cogswell v. Cogswell, 178 Or. 417, 167 P.2d 324 (1946); Goodrich, Conflict of Laws § 139 (1949).

Two facets of the Casey decision were given particular emphasis by the referee. First, he relied heavily upon the court's discussion of "alimony" as including child support payments. However, the referee failed to consider that discussion in context. The court was considering whether the lower court was empowered to enforce by contempt proceedings a failure to make decreed child support payments. Section 11-501, O.C.L.A. authorized punishment for "[D]isobedience of any lawful judgment, decree, order or process of the court, including judgments, orders and decrees for the payment of suit money, alimony and attorney's fees pendente lite, or by final decree, in suits for dissolution of marriages." More specifically, the court was deciding whether "alimony" as used in the cited section included support and maintenance of minor children as well as divorced wives. The court concluded the legislature "intended the word 'alimony' *as used in subdivision 5 of § 11-501, O.C.L.A.* to include sums of money directed by judgments, orders and decrees to be paid for the support

---

1. "The decree is a final judgment as to any installment or payment of money which has accrued up to the time either party makes a motion to set aside, alter or modify the decree, *and the court does not have the power to set aside, alter or modify such decree, or any portion thereof, which provides for any* *payment of money, either for the nurture or education of minor children or the maintenance of either party to the suit, which has accrued prior to the filing of such motion.*" [Emphasis supplied. The emphasized portion, added by amendment in 1921, was the part relied upon by the referee.]

and maintenance of minor children of divorced parents, as well as allowances for the maintenance of divorced wives." 175 Or. at 336, 153 P.2d at 703. (Emphasis supplied.) And examination of other Oregon cases indicates clearly that "alimony" is not a word of art but that its meaning varies in changing contexts, usually statutory. Bennett v. Bennett, 208 Or. 524, 302 P.2d 1019 (1956); Nelson v. Nelson, 181 Or. 494, 182 P.2d 416 (1947); Cogswell v. Cogswell, supra.

One further portion of the Casey decision, relied upon by the referee, requires attention. In that case the defendant-father contended that plaintiff was required to establish the amount of money she expended in lieu of support payments from the father. The court rejected this contention, noting that the "plaintiff is not seeking to recover judgment against the defendant for money expended by her for support of the children, * * * but to compel him to obey the order of the court. * * * Nor may we be concerned herein with the use that the plaintiff may intend to make of the money which the defendant has been ordered to pay." 175 Or. at 339, 153 P.2d at 704. The referee took this remark by the court as an indication that ownership of the payments, or of claims to them, rested with the custodial parent. However, I believe this is a misinterpretation of the court's discussion and that its remark instead indicates that any consideration of misappropriation is premature and speculative during a proceeding against the father for nonsupport and that misappropriation, if it occurs, must be dealt with in another proceeding after the fact.

As indicated, I have placed particular emphasis upon the Casey holding that the custodial parent dealt with child support payments in lieu of a trustee the court could have appointed. The exact nature of the parent's apparent status as a fiduciary—whether a trustee or otherwise—is, of course, another question. The Supreme Court of Oregon has held that, in some circumstances, a parent is the "natural guardian" of the child. Ohio Casualty Insurance Co. v. Mallison, 223 Or.

406, 354 P.2d 800 (1960). This designation may be more satisfactory here than that of trustee, considering the absence of an express appointment and the difficulties imposed by the traditional boundaries of express, resulting and especially constructive trusts. Scott on Trusts § 462 (1956).

In light of the foregoing, I have concluded that the custodial parent, as either a trustee, Collier on Bankruptcy § 70.25 (1) (1964), and cited cases, or a guardian, albeit "natural," lacks ownership for bankruptcy purposes of the choses in action involved here. Those choses could neither survive her nor be transferred by her, nor be levied upon, seized, impounded or sequestered in a proceeding against her in her personal capacity.

Accordingly, the decision of the referee must be reversed and the cause remanded for proceedings not inconsistent herewith.